ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* BARNETT.

Opinion delivered April 23, 1898.

1. RAILWAY—STATION PLATFORM—INSTRUCTION.—The giving of an instruction to the effect that it is the duty of a railroad company to keep its station platforms in *safe* condition for the use of passengers is not cause for reversal where no specific objection was taken to the court's failure to limit or explain the meaning of the term "safe." (Page 257.)

2. SAME—INSTRUCTION.—In an action to recover from a railway company damages sustained by a passenger while stepping from a train, where the only issue was whether or not the injury was caused by stepping upon a defective platform, the defendant asked the court to instruct as follows: "If you find from the evidence that plaintiff's fall was occasioned by her taking too short a step to reach the platform, your verdict will be for the defendant." The court modified the above by adding, "provided you find that the same was the cause of the accident, and that the defendant was not negligent on its part, which was the proximate cause of the injury complained of." *Held* that the instruction should have been given as asked; that the modification was prejudicial in permitting the jury to find defendant liable, though the injury resulted from a cause other than stepping upon a defective platform, and in excluding consideration of the defense of contributory negligence. (Page 261.)

Appeal from Clay Circuit Court, Western District.

FELIX G. TAYLOR, Judge.

*Dodge & Johnson*, for appellant.

Railroad companies are not insurers of the safety of persons rightfully on their platforms. The only duty they owe such persons is to use ordinary care to keep their platforms, etc., in safe condition. 48 Ark. 493; 61 Ark. 155; 55 Ark. 432; *ib.* 19; 13 Peters, 181; Thomp. Car. of Pass. 124, 183, 199; 56 N. Y. 655; 11 Allen, 312. The duty of exercising the highest degree of care, and diligence continues only during the transportation on the cars. Thomp. Car. Pass. 104; 57 Ark. 298. There is an utter failure to prove any actionable negligence with respect to the safety of the platform. Incompetent testimony was admitted.

*Annie Barnett, appellee, pro se.*

Railway companies are bound to keep in a *safe condition* all their platforms, etc., to which passengers have a right and naturally do resort to, in their approach to or exit from the company's cars. Whit. Smith Neg. 390; 26 Ia. 124; 37 Ark. 517; 2 Wood, Railways, 1170; 46 Ark. 195, and cases cited; 48 Ark. 125; 19 S. W. 182; 29 S. W. 860; 2 So. 586; 5 Am. & Eng. Enc. Law (2 Ed.), 572, 586, 587, and notes; 76 Fed. 519. Sufficient foundation was laid, in appellee's testimony, upon which to base a hypothetical question to an expert. 1 Greenl. Ev. § 440; 1 Cent. Rep. 625; 108 Pa. St. 395; 9 Car. 601. Testimony founded on facts known to witness is not incompetent. 61 Pa. St. 404; 1 Cent. Rep. 143; 110 Pa. St. 339; 17 N. Y. 350; 2 L. R. A. 669, and note; 39 S. W. 550; 63 Ark. 391. The fact that the platform was defective and that the plaintiff was injured was sufficient to cast the burden on appellant to prove that it was not negligent. 21 S. W. 883; 54 Ark. 213; 15 S. W. 610; 5 Am. & Eng. Enc. Law (2 Ed.), 522. There being no error in the instructions, this court will not disturb the findings of fact. 48 Ark. 495; 37 S. W. 867.

WOOD, J. This suit is to recover damages for personal injuries produced by the alleged negligence of appellant in keeping a defective platform. The answer denied negligence, and charged appellee with contributory negligence. The evidence on behalf of the appellee tended to show that, as she debarked from one of appellant's trains at Corning station, she was injured in stepping upon a plank of the platform which was loose and tilted to one side, thereby letting her fall. The plank was at the edge of the platform. It lay straight with the track. One of the witnesses testified: "The plank was loose; gave down an inch over the sleeper; would tilt towards the track." Another testified: "If a person stepped right on the edge of the plank, it would raise a little—not a great ways—because the nails had just worked loose. . The plank was a solid two-inch plank, but a little loose." On behalf of appellant the evidence tended to prove that the plank was not loose. One witness testified "that he weighed 198 pounds, and the next morning after the injury stepped upon

the plank, and it would not tilt with him. He examined it, and found it sound." Other witnesses testified that they inspected the plank, and did not find anything the matter with it. With the evidence thus conflicting, we would not disturb the verdict upon the question of fact as to the defective platform. But the jury should have been properly instructed as to the degree of care that railroads owe their passengers to protect them from injury by reason of defective platforms.

1. The court instructed the jury as follows: "That it is the duty of the railroad company to keep the platform at its various station houses in good repair and *safe condition* for the use of those who have a legal right to go upon them. And if you find from a preponderance of the evidence that the injury complained of in this case was directly caused by the failure of the defendant railroad company to keep the platform of the depot in repair, then you will find for the plaintiff."

In *McDonald* v. *C. & N. W. R. Co.*, 26 Ia. 124, Judge Dillon, speaking for the court, said: "They [railroads] are bound to keep in safe condition all portions of their platforms and approaches thereto, to which the public do, or naturally would resort." Our own court in *Tex. & St. L. R. Co.* v. *Orr*, 46 Ark. 195, uses this exact language, and in *St. L., I. M. & S. R. Co.* v. *Cantrell*, 37 Ark. 517, and *L. R. & F. S. R. Co.* v. *Cavenesse*, 48 Ark. 125, this court has apparently sanctioned the rule in the broad terms as above quoted. An examination of the facts of the Arkansas cases, however, will show that this court was not called upon to discuss, nor did it have in mind, the care which should be exercised by a railroad to furnish its passengers safe platforms at its stations for entrance to and exit from its trains. In *Tex. & St. L. R. Co.* v. *Orr* the injury was produced by an "open ditch and trestle," the existence of which the railway knew, and the railroad did not pretend to deny that it was negligence to thus keep it, provided the passengers were justified in passing over the route in which the said ditch and trestle lay. In *St. L., I. M. & S. R. Co.* v. *Cantrell*, and *L. R. & F. S. R. Co.* v. *Cavenesse*, *supra*, the injuries complained of were not produced by defective platforms at all. In none of these cases, therefore, was the exact question we have here involved.

In speaking of the duties of masters to servants or rail-roads to passengers, text writers and judges often use expressions like these, to-wit: "They are bound to furnish *safe machinery, safe appliances, safe places to work, safe platforms,*" etc. Hutch. Car. § 516; *Penn. R. Co.* v. *Henderson*, 51 Pa. St. 315; *Liscomb* v. *Ry. & Trans. Co.*, 6 Lans. 75; *Toledo, etc. R. Co.* v. *Grush*, 67 Ill. 262; *McDonald* v. *C. & N. W. Ry. supra; Tex. & St. L. R. Co.* v. *Orr.* and *L. R. & Ft. S. R. Co.* v. *Cavenesse, supra;* Ray, Neg. Imp. Duties, 91; *Wallace* v. *Wilmington & N. R. Co.*, 18 Atl. Rep. 818; 2 Wood, Railways, pp. 1340, 1341, 1344.

But in none of the works or adjudicated cases does the word "safe," when thus used, have an absolute or unqualified meaning; for that would make these classes of persons guarantors or insurers of the safety of their servants, employees and passengers. Every legal tyro knows that such is not the law. "Accidents, strictly speaking, are those things which human prescience and prudence can neither foresee nor forestall. Our own court in *L. R. & F. S. R. Co.* v. *Cavenesse, supra*, shows clearly that the word "safe," when used as above, does not have an absolute or unqualified meaning; for, while it is said "that it is the duty of the carrier to keep its stations and approaches thereto in good condition, and to provide *safe* and convenient means of entrance and departure," it is also said that carriers of passengers are not insurers of the safety of their passengers, as they are of goods, at common law. While lawyers understand this, jurors may not. So, to prevent any misapprehension of the term "safe," when employed as above, the trial court, if requested, should so define it as to present the real duty of railroads to their passengers in the matter of shielding them against dangers growing out of the use of station platforms. *What is that duty?* Railroads, according to the decided weight of authority, must exercise ordinary care in providing station platforms that will secure their passengers, in so far as such care can do so, against any injury that may result in the use of them. 1 Fetter, Car Pass. § 47; *Kelly* v. *Manhattan Ry. Co.*, 112 N. Y. 443; 20 N. E. Rep. 383; *Lafflin* v. *Buffalo R. Co.*, 106 N. Y. 136; *Taylor* v. *Penn Co.*, 50 Fed Rep. 755; 4 Elliott, Rail-

roads, § 1590, cases cited; Hutchinson, Car. § 521a; *Moreland* v. *Boston & P. R. Co.*, 141 Mass. 31.

Such "ordinary care" is that which a man of ordinary prudence would exercise under the circumstances to accomplish the end in view, namely, the safety of the passenger. As was said in *Central R. & B. Co.* v. *Ryles*, 84 Ga. 420, 11 S. E. 499, ordinary care "is a relative, and not an absolute term. The degree of care and foresight which it is necessary to use (in any given case) must always be in proportion to the nature and magnitude of the injury that will be likely to result from the occurrence which is to be anticipated and guarded against." *St. L., I. M & S. R. Co.* v. *Hecht*, 38 Ark. 357; Bailey's Master & Servant, "Care," § 963 *et seq.*, 4 Elliott, Roilroads, p. 2479. It will thus be seen that even the ordinary care which requires a degree of prudence and vigilance commensurate with the perils to be apprehended and the injuries to be avoided may require a high degree of care, because, as the sequel in this case shows, assuming that the verdict was correct, the danger was great. Passengers are invited by railroads upon their station platforms for the purpose of making entrance to and exit from their trains. There is always more or less noise and confusion incident to the running of trains. Then the jostling and scurrying to and fro of the crowds, passengers and others, coming and going, altogether, make the circumstances quite unpropitious for passengers to make minute or extended investigations for their own safety. They do not have to do so. They may naturally and properly expect that the railroad has used every reasonable and prudent precaution to make their platforms safe, and may rest upon that assurance, only exercising ordinary care to prevent injury to themselves in the use of them.

Measured by the law as thus announced, the instruction above quoted was susceptible of misconstruction by the jury, inasmuch as they might have concluded therefrom that the railroad was bound to provide a platform that was absolutely safe. The court, however, doubtless used the term "*safe*" in the instruction in the qualified sense it is understood by the profession, and meant that it should be so understood by the jury, Appellant's counsel, it is true, objected to the instruction, but they must have

known the meaning which the court intended the request should convey. Yet they did not ask the court to limit or explain the meaning of the term "safe," as used in the above instruction. We think, under the circumstances, to have made their objection avail here, they should have done so. This would have been but fair to the trial judge, and, had he refused, then appellant would have been in proper attitude to press for reversal on account of the ruling of the court upon the above instruction.

2. Appellant also asked the following instructions: "(10) If you find from the evidence that plaintiff's fall was occasioned by her taking too short a step to reach the platform, your verdict will be for the defendant. (11) Unless you find that plaintiff's fall was occasioned by her stepping upon the platform, and the plank tilting, thereby causing her foot to slip off, your verdict will be for the defendant." The court refused the eleventh and gave the tenth in a modified form, as follows: "(10) If you find from the evidence that plaintiff's fall was occasioned by her taking to short a step to reach the platform, your verdict will be for the defendant, provided you find that the same was the cause of the accident, and that the defendant was not negligent on its part, which was the proximate cause of the injury complained of."

After waiving her claim of right to recover on the ground that the platform was not sufficiently lighted, and after the court had instructed the jury that the defendant owed no duty to assist persons off of its trains, the only issues left under the pleadings and proof were as to whether or not the defendant had permitted a plank upon its platform to become loose, which caused the injury to the plaintiff when she stepped upon same, and whether or not the plaintiff stepped far enough to reach the platform. If the plaintiff stepped far enough to reach the platform, then the proximate cause of her injury, taking the verdict of the jury as correct on the facts, was the loose plank upon the platform. If she did not step far enough to reach the platform, then her failing to do so was the proximate cause of her injury and not the loose plank upon the platform. It is apparent, therefore, that the giving of the tenth instruction in its modified form was erroneous and prejudicial. The proviso or

modification added to it by the court neutralized the effect intended by the first part of the instruction, and deprived appellant of its defense of contributory negligence under the proof. It is not contended by appellee that the platform was too far from the steps of the car for her to step upon, nor that she was in any other manner injured through the negligence of appellant than in its permitting the plank upon its platform to become loose upon which she stepped in getting off the train. It is obvious that, if appellee did not step upon the platform at all, the loose plank could have nothing to do with her injury. But, under the modified instruction, the jury, although they might have found that appellee did not step far enough to reach the platform, were yet authorized to find some other proximate cause of the injury.

While it might not have been reversible error to have refused the tenth and eleventh instructions, in view of other instructions on negligence and contributory negligence given by the court, it was manifest error to give the tenth instruction with the modification. But the tenth and eleventh requests as asked by the appellee presented the law upon the direct issues raised on the questions of negligence and contributory negligence, and the court might well have given them.

For the error in giving the tenth instruction as modified by the court, the judgment is reversed, and the cause is remanded for new trial.