FURLOW v. STATE.

Opinion delivered April 30, 1904.

1. INDICTMENT—PLACING OBSTRUCTION ON TRACK—SUFFICIENCY.—An indictment which charges that defendant placed an obstruction upon the track of a certain railway company, and afterwards in charging the intent refers to the track as "said railway track," sufficiently charges that the obstruction was placed on a railroad track. (Page 390.)

2. NONWITNESS—IMPEACHMENT OF CREDIBILITY.—It was not error to refuse to permit defendant to impeach the credibility of one who was not offered as a witness by showing that he was prosecuting defendant for a reward. (Page 390.)

3. TRIAL—REPEATING INSTRUCTIONS.—Requests for instructions which were covered by instructions given were properly refused. (Page 390.)

Appeal from Pike Circuit Court.

JAS. S. STEELE, Judge.

Affirmed.

*J. H. Harrod, J. C. Pinnix, D. B. Sain,* for appellant.

The court erred in overruling the demurrer. Sand. & H. Dig. § 1858. The court erred in refusing instruction No. 9 and in modifying same. 32 Ark. 753; 1 Greenleaf, Ev. § 34.

*G. W. Murphy, Attorney General,* for appellee.

BATTLE, J. On the 20th day of February, 1903, the grand jury of Pike county returned the following indictment against Zack Furlow:

"The grand jury of Pike county, in the name and by the authority of the State of Arkansas, accuse Zack Furlow of the crime of obstructing railway track, committed as follows, towit: The said Zack Furlow in the county and state aforesaid, on the 12th day of September, A. D. 1902, did then and there unlawfully, willfully, maliciously and feloniously place an obstruction upon the track of the Arkansas Southwestern Railway Company, by placing on said track large pieces of iron or steel at a point on the track of the said Arkansas Southwestern Railway Company at or near J. M. Durrett's mill. The said Zack Furlow placed said obstruction on said railway track, as aforesaid, with the intent then and there to obstruct the passage of cars thereon, and to throw them off the track, against the peace and dignity of the State of Arkansas."

The defendant demurred to the indictment, and, his demurrer being overruled, he saved exceptions.

In the trial that followed evidence was adduced which tended to prove the following among other facts: On the 12th of September, 1902, railroad spikes about five or six inches long and one inch thick were found on the railroad in Pike county, in this state, near Durrett's mill, and about three miles from Antoine,

S C—13

and extended along the track between a quarter and a half of a mile. These spikes were stuck in about every two or three railings between the ends, some being stuck straight in from the top with about three or four inches projected above railing. Zack Furlow was accused of placing them there, and was arrested by Leonard Hammons, a constable of Pike county. He testified that he had Furlow in custody for two days, "and started with him to Murfreesboro, to place him in jail, and when we got near the place where the offense is alleged to have been committed, I asked the defendant if I was carrying a guilty person or an innocent person to jail. The defendant told me he did it. When I got to Delight, there was a 'phone message for me to bring the prisoner back to Antoine; that bail had been obtained for him. On my way back to Antoine I met Joe Dickinson, and he got on the hack with us. I told him what the negro had told me, and Dickinson asked the negro if it was so, and he repeated what he said to me." Hammons testified that he offered him no inducement to make the statement; that he did not tell the prisoner that, if he did not confess that he committed the crime, witness would take him to Pike City and turn him loose there among the white people, and that the white people would not let a negro live there; that witness did not tell him "that it would be better for him if he would admit that he committed the crime;" but he thinks that he told the prisoner "that it would be better if he would tell" witness "the truth about it;" that he did not hear Dickinson tell the prisoner "that if he would confess the crime that he would get him out of it."

Wall, a witness, testified, that he asked Furlow why he placed the obstructions on the track, and he said "just to play a joke on Uncle Doak."

It was proved that the railroad company has a "standing offer of one thousand dollars for the arrest and conviction of anyone placing obstructions upon" its track. The defendant offered to introduce Joe Dickinson and prove by him that he was prosecuting him (the defendant) for the purpose of getting this reward, and the court refused to allow him to do so.

The defendant testified in his own behalf, in part, as follows: "As Mr. Hammons was carrying me to jail, he told me that if I did not tell him that I did it, he would carry me to Pike

City, and turn me loose there among the white people, and says, 'You know what they will do to you up there.' I had been told that a negro was not allowed to go to Pike City, and I was afraid to go there, and I thought he would carry me there, as he said he would, and, in order to prevent him from doing so, I told him that I did it. I told him at the time that I was not guilty, but that I would tell him that if he would not carry me to Pike City. As we went on back to Antoine, Mr. Dickinson told me that if I would tell him that I did it, he could and would get me out of it, and I told him that I was not guilty. I never had a conversation with Wall about the matter."

The court, among others, gave to the jury the following instructions:

"II. The court instructs the jury that if you find from the evidence beyond a reasonable doubt that the offense charged in the indictment in this case was actually committed, then you are told that a voluntary confession made by the defendant, if you believe the same to have been made, is sufficient to authorize a conviction in this case.

"1. The court instructs the jury that, in cases where it is depending alone on circumstantial evidence, the jury must, in weighing the evidence, be governed by certain rules of law; the hypothesis of guilt of the offense charged in the indictment should flow naturally from the facts proved, and be consistent with them all, and the evidence must be such as to exclude any reasonable hypothesis but that of the defendant's guilt of the identical offense imputed to him; or, in other words, the facts proved must all be inconsistent with his innocence. If the evidence can be reconciled either with the theory of innocence or guilt, the law requires the jury to give the accused the benefit of the doubt, and to adopt the theory of innocence, and to acquit.

"2. The court instructs the jury that, before you can convict the defendant in this case, you must believe beyond a reasonable doubt that the defendant placed the iron spikes or bolts on the track of a railroad, and that they were placed there with the intent to obstruct the passage of a car or cars thereon, or to throw them off the track.

"6. The jury are instructed that, when the prosecution relies upon circumstantial evidence alone for conviction, the jury

must be satisfied, beyond a reasonable doubt, that the crime has been committed by some one in the manner and form as charged in the indictment; and they must not only be satisfied that all the circumstances proved are consistent with the defendant's having committed the act, but they must be satisfied that the facts are such as to be inconsistent with any other rational conclusion than that the defendant is the guilty person. If there is one single fact proved to the satisfaction of the jury by a preponderance of the evidence which is inconsistent with the defendant's guilt, this is sufficient to raise a reasonable doubt, and the jury should return a verdict of not guilty."

"8. You are instructed that a reasonable doubt, within the meaning of the law, does not mean an imaginary doubt, but it does mean that before you can convict you must have considered all the evidence in the case, giving to each witness such credit, and their evidence such weight, as in view of all the evidence in the case you may deem it entitled to; and after weighing all the evidence in the case, both for the state and defendant, your mind is left in an unsatisfactory condition with reference to the defendant's guilt or innocence, either from the contradictory evidence in the case, or from any other cause, you must resolve that doubt in favor of the defendant, and return a verdict of not guilty.

"9. You must not allow the gravity of the charge to in any way sway or bias your judgment against the defendant. You must look alone to the evidence in the case, and when you make a decision you must make it upon credible evidence, such evidence as you would fully believe and rely upon in the most important affairs of your lives. The defendant is presumed by law to be innocent, and this presumption in his behalf * * * protects him from conviction until his guilt is established beyond a reasonable doubt. If, therefore, you have a reasonable doubt of the defendant's guilt, after a careful and unbiased consideration of all the evidence in the case, you must resolve the doubt in favor of the defendant, and return a verdict of not guilty.

"10. You are instructed that under the law no jury should convict a man upon mere suspicion, or simply because there is a preponderance of all the evidence against him, or simply because there is a strong reason to suspect that he is guilty; but before

you can convict you must be convinced from the evidence, and nothing else, of the defendant's guilt beyond a reasonable doubt.

"11.  You are instructed that mere probabilities are not sufficient to warrant a conviction, nor is it sufficient that the greater weight of evidence support the theory, nor is it sufficient that upon the doctrine of chance it is more probable that the defendant is guilty than that he is innocent; but to warrant you in the conviction of the defendant he must be proved to be guilty so clearly and conclusively that there is no reasonable theory under the evidence upon which he can be acquitted."

The defendant asked, and the court refused to give, the following instructions:

"4.  If the jury find from the evidence that the accused, at or about the time of this arrest, made false and contradictory statements calculated to excite suspicion against him, still these statements, if they can reasonably be attributed to any other motive or cause than that of a consciousness of guilt of the crime charged in the indictment and a desire to conceal it, then they should be attributed and explained, and in such cases they should not be regarded as any evidence of guilt of the crime charged.

"5.  The court instructs the jury that, to authorize a conviction on circumstantial evidence alone, the circumstances should not only be consistent with the prisoner's guilt, but they must be inconsistent with any other rational conclusion or reasonable hypothesis, and such as to leave no reasonable doubt in the minds of the jury of the defendant's guilt.

"12.  The court instructs the jury that, where verbal admission of a person charged with crime is offered in evidence, the whole of the admission must be taken together, as well that part of it which makes for the accused as that part of it which makes against him, and if the part of the statement which is in favor of the defendant is not disproved, and is not apparently improbable or untrue, when considered with all the other evidence in the case, then such part of the statement is entitled to as much consideration from the jury as any other part of the statement."

The jury found the defendant guilty, and assessed his punishment at six months' imprisonment in the penitentiary. The court rendered judgment accordingly, and the defendant appealed.

. Appellant insists that the indictment is defective because there is no allegation in it that the obstruction was placed upon the track of a railroad. It is alleged that the obstruction was placed upon the track of the Arkansas Southwestern Railway Company, and this track is afterwards mentioned as ."said railway track." This is a sufficient allegation that the obstruction was placed upon the track of a railroad.

Appellant ·contends that the court ought to have allowed him to prove by Dickinson that he (Dickinson) was prosecuting defendant for the purpose of getting the one thousand dollars' reward. This testimony was inadmissible. The reward did not tend to show the guilt or innocence of the appellant. If Dickinson had testified for the state, it would have been admissible to impeach his credibility. But Dickinson was not a witness, and its introduction could have served no useful purpose.

There was no error in refusing instructions. So much of them as was the law in the case were contained in the instructions given.

Judgment affirmed.

BUNN, C. J., absent.