MOUNT NEBO ANTHRACITE COAL COMPANY *v.* WILLIAMSON.

Opinion delivered January 14, 1905.

1. EVIDENCE—PREJUDICE—INVITED ERROR.—In an action by a miner against a company alleged to be operating a coal mine to recover damages sustained in an explosion of gas, where the defense was that the company did not operate the mine, though it owned it, evidence that an officer of such company had made a statement to the effect that

the purchasers of the mine intended to organize it so that one company would operate the mine while .another owned it, thereby relieving the latter of liability for damages, was not prejudicial, if evidence introduced by the defendant company tended to prove that it had sought to. accomplish such intention.   (Page 534.)

2.  INSTRUCTION—GENERAL OBJECTION—SUFFICIENCY.—A general objection to the following instruction, towit, "it is the duty of every person or corporation employing miners to dig or mine coal to furnish a reasonably safe place to work," is insufficient to raise the point that the court failed to explain the meaning of the word "safe." *St. Louis, I. M. & S. Ry. Co.* v. *Barnett*, 65 Ark. 255, followed. (Page 534.)

3.  SAME—CONTRIBUTORY NEGLIGENCE OF MINER.—In an action by a miner against a mine company to recover for personal injuries caused by an explosion of gas in the mine, an instruction that "if plaintiff knew of the existence of gas in his place of working, but did not inform the persons whose duty it was to make such examination, then the plaintiff was guilty of contributory negligence," was properly refused, as the instruction made it plaintiff's duty to report the existence of gas, though defendant knew or ought to have known such fact.  (Page 535.)

Appeal from Pope Circuit Court.

WILLIAM L. MOOSE, Judge.

Affirmed.

*Morris M. Cohn,* for appellant.

The court's instruction on the question of safe appliances was abstract and misleading.   68 Ark. 316; 56 Ark. 237; 65 Ark. 98; 60 Ark. 442; 59 Ark. 98; 58 Ark. 324; 54 Ark. 389; 54 Ark. 483.   The injury was the result of an assumed risk.   54 Ark. 289; 45 Ark. 318; 35 Ark. 602; 66 Ark. 237; 59 Ark. 465; 48 Ark. 460; 46 Ark. 555; 44 Ark. 524.   It was appellee's duty to observe conditions and report any signs of danger observed.   42 Ill. App. 619; 44 Ark. 524.   If there was bad air, it was the fault of appellee.   133 Ala. 279; 59 Ark. 465.   Where the plaintiff has as good means of knowing as the defendant, he cannot complain. 63 Wis. 307; 76 Wis. 136; 29 Conn. 548; 133 Ga. 934.   Opinion evidence, being objected to, should have been excluded.   24 Ark. 251; 75 Cal. 349; 57 N. Y. 146; 94 Ia. 423; 1 Miss. 353; 34 Neb.

1 ; 57 N. Y. 651; 24 Ark. 251; 70 Hun, 48; 76 Texas, 506; 21 Vt. 123; 94 Ia. 423; 155. Pa. St. 170. The charter of a corporation cannot be collaterally attacked. 78 Pa. St. 465; 20 Ark. 204. Private parties cannot set up in defense misuses of corporate rights to defeat corporate rights. 20 Ark. 204. The fact that two corporations. have the same officers and stockholders does not make them one. 70 Ark. 10; 23 S. W. 335; 4 Ark. 357; 46 Fed. 157; 93 N. Y. 1024; 167 N. Y. 368. The Martin Mining Company was an independent contractor, and appellant could not be liable for its negligence. 55 Ark. 510; 12 So. 103; Bailey, Mas. & Ser. Chap. XXII; 64 Minn. 22; 185 Pa. St. 75. The statements of Clifton D. Martin were inadmissible. 14 Ark. 86; 34 Ark. 451.

*Bullock & Lawrence,* for appellee.

The Martin Mining Company was the agent of the appellant. 42 Ark. 97; Whitt. Smith, Neg. 212, 213; S. & R. Neg. § 76; 71 S. W. 123. This court will not reverse where the judgment is obviously right upon the whole record. 46 Ark. 542; 21 Ark. 467.

BATTLE, J. John W. Williamson brought this action against the Mt. Nebo Anthracite Coal Company, alleging in his complaint that the defendant employed him to labor as a miner in a coal mine that it was operating in Pope County, in this State; that on a certain morning while he was so employed its "pit boss" made an inspection of the mine, and marked "O. K." on the wall, to indicate that the mine was free from gas, when in fact it was not, but was in a dangerous condition; and that on that morning at 8 o'clock, after the inspection, when he was entering his room to work, a gas explosion occurred, and he was thereby seriously injured. He asked for judgment for damages.

The defendant answered, and denied generally all the allegagations in the complaint, but did not specifically deny the allegations as to the inspection by the "pit-boss," the marking on the wall, the dangerous condition of the defendant's room in the mine, the explosion, and the injury of the defendant. It alleged that "it is not now nor was it at the time of said alleged injuries operating any coal mines in Pope County, nor had it any control or management of the mines where plaintiff is alleged to have been injured, or of the employees therein, but the same were entirely

under the control and management of the Martin Mining Company, an independent contractor, in whose employ the plaintiff then was."

During the trial in this case A. Lloyd, a witness in behalf of the plaintiff, testified as follows: "I was selling out Mrs. Lloyd's and our interests in the Southern Anthracite Coal Company to Mr. Clifton D. Martin (an officer and stockholder of the defendant company). We were in Granger's office, and after Granger said the papers were O. K., Mr. Martin turned to Mr. Eustice and said, 'Now, Bud, after we organize, we must do the same for the company as we have done with the Martin Mining Company.' and Bud said, 'What's that?' Mr. Martin then told him it was for one mine or company to operate them, and the other to own them, sc as to relieve them of the responsibility. The defendant objected to this testimony; and its objection was overruled, and it excepted.'

The defendant adduced evidence tending to prove that it was the owner of the mines, and that it and Martin Mining Company, on or about the first of August, 1899, entered into a contract in and by which the latter company agreed to operate the mines for the period of five years, and was to have the exclusive control and management of the mines during the five years, and assumed all responsibilities or liabilities for the safe operation and conduct of the same; and the defendant agreed to pay for all coal mined and loaded for transportation, or stored ready for transportation the sum of $2 per ton.

The court instructed the jury, over the objections of the defendant, in part, as follows:

"You are instructed that it is the duty of every person or corporation employing miners to dig or mine coal to furnish a reasonably safe place to work. Reasonably safe appliances."

And refused to instruct the jury, at the request of the defendant, as follows:

"The law requires that persons operating coal mines, where more than 20 employees are working under ground, shall provide and maintain a sufficient amount of ventilation, to be determined by the mine inspector, not less than 100 cubic feet of air per man per minute, measured at the foot of the down-cast, which shall be circulated to the face of every working place throughout the mine, so that the mine shall be free from standing gas; and in mines

where the fire-damp is generated every working place where fire-damp is known to exist shall be examined every morning with a safety lamp by a competent person before any other persons are allowed to enter the same; but this is not required unless the existence of gas is known to the operators of the mine. And, if you find that the amount of air required was circulated in the mine, and the plaintiff knew of the existence of gas in his place of working, but did not inform the persons whose duty it was to make such examination, then the plaintiff was guilty of contributory negligence, and you will find for the defendant."

The question as to the Martin Mining Company operating the mines as an independent contractor, and the plaintiff being in its employment at the time he was injured, was submitted to the jury for decision, and they found in favor of the plaintiff, and returned a verdict in his favor for $1,000. Judgment was rendered for that amount in his favor, and the defendant appealed.

We think that the admission of the testimony of Lloyd was not prejudicial. There was nothing in it to show or intimate that the mines in question were operated by the appellant in the name of the Martin Mining Company, and that the contract between them was made to conceal the same, more than the evidence adduced by the appellant tended to prove. The statement of Martin tended only to show that the mine purchased could be operated by an independent contractor, without subjecting the owners thereof to liability on account of its operation.

The general objection of the appellant to the instruction given over its objection was not sufficient. This court held, in *St. Louis, Iron Mountain & Southern Railway Co.* v. *Barnett*, 65 Ark. 255, 259, that a similar objection was insufficient. The following instruction was objected to in that case: "That it is the duty of the railroad company to keep the platform at its various station houses in good repair and safe condition for the use of those who have a legal right to go upon them. And if you find from a preponderance of the evidence that the injury complained of in this case was directly caused by the failure of the defendant railroad company to keep the platform of the depot in repair, then you will find for the plaintiff." The plaintiff did not ask the court to explain the meaning of the word "safe," as used in the instruction. This court held that, to make its objection effective

here, the defendant should have done so.  Such defects can be easily remedied, upon request, and it is the duty of the party affected to call the attention of the trial court to them.

The instruction refused by the court was erroneous.  By it the court was asked to instruct the jury as follows: "If you find that the amount of air required was circulated in the mine, and the plaintiff knew of the existence of gas in his place of working, but did not inform the persons whose duty it was to make such examination, then the plaintiff was guilty of contributory negligence, and you will find for the defendant."  According to this request for an instruction, it was the duty of appellee, if he knew of the existence of gas in his place of working, to inform the defendant, notwithstanding it knew or ought to have known that fact.

Appellee alleged in his  complaint, and appellant did not specifically deny in its answer, "that Bob Baker is the pit-boss at said mines, and that he inspects the same every morning before the miners enter upon their labor, and it is his duty to use a safety lamp, and ascertain whether or not there is standing gas or fire-damp in said mine; and if there is found to be either, it is his duty to indicate the same by marks or signs at the entry, or in some conspicuous place, and that on  said  dates  said  pit-boss, Bob Baker, carelessly and negligently made said inspection, and at the entry where plaintiff had been digging, said Baker marked with chalk on the wall of the mine 'O. K.' which indicated that he had made the inspection, and that said mine was free from gas, when in fact such was not the case, but, on the contrary, said mine was in a dangerous condition for the safety. of employees therein; and that about 8 o'clock in the morning on said date plaintiff started to enter his usual place of digging coal, pushing a car in front of him, when a gas explosion occurred with terrible force, and severely injured him."  Evidence tending to prove these allegations was adduced.  And it was shown to be the duty of the pit-boss to examine the mines every morning for the purpose of ascertaining if they were safe for the miners—whether it was free from gas. He did so, and decided it was, when it was not. There was no evidence that appellee knew it was not at that time.  He had a right to rely upon the inspection of the pit-boss. He did, and was injured by a gas explosion. The result shows that the inspection was not sufficient; and there is no evidence to show that it

could not have been made so by ordinary diligence. There was evidence to show that the ventilation of the mine was deficient.

The evidence was sufficient to sustain the verdict of the jury.

There is a contention that the trial court erred in admitting, as evidence, the statement of certain witnesses, in which they say that they understood that they were employed by the appellant; but we need not notice it further than to say that it was not referred to in the motion for a new trial, and was therefore waived.

Judgment affirmed.