ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

*v.* RICHARDSON.

Opinion delivered November 2, 1908.

1. INSTRUCTIONS—REPETITION.—It was not error to refuse to multiply instructions announcing in effect the same legal principles. (Page 606.)

2. CARRIERS—DUTY TO PASSENGERS—INSTRUCTION.—An instruction that "it is the duty of the carrier of passengers to use the highest degree of care, diligence and skill, which means the highest degree of care, diligence and skill that a prudent and cautious man would exercise, to prevent its passengers from injuries by providing a reasonably safe track and handling its trains in a careful and prudent manner in view of the nature of said track," in the absence of any specific objection, sufficiently states the rule laid down in *Railway Company* v. *Sweet,* 60 Ark. 550. (Page 607.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; affirmed.

STATEMENT BY THE COURT.

The appellee, a commercial traveler, was a passenger on appellant's train between Little Rock and Texarkana. He was

riding in a sleeper.  About ten o'clock in the morning, after he
had made an effort to hang his hat on a hook, he was standing
on both feet in the aisle of the car.  The train was going at a
very high rate of speed, and the car he was in gave a very
decided lurch, causing appellee to fall, and to break the second
joint of the third finger on the left hand.  Appellee had been
riding continuously on trains for a great number of years.  The
lurch was a swinging, sinking movement, as well as he could
describe it.  The movement was like one set of wheels being
thrown lower than the other.  It was not caused by making a
curve.  One side of the car went down, and the other up.  Ap-
pellee was earning at the time of his injury $21.75 per day.  He
lost twenty-two days while under treatment of his physician,
and about two weeks after that.  His doctor bills were $10.75.
The injury was painful at the time of the occurrence, and was
still painful at times when the trial was had.  The fracture of
the joint had never knitted, so that it was the same as before the
injury.  On account of the injury he did not have the same grip
and could not carry his sample case as he once could.  Appellee
sued appellant, alleging that it was "negligent in failing to main-
tain a reasonably safe track, from low places and defects, and
in a condition suitable for the proper running of trains, and
that appellant was negligent in running at a high rate of speed
over a track containing such defects."  Damages were laid at
$2000.

The appellant denied all the material allegations, and set
up contributory negligence.

The court gave at the request of appellee the following
prayers:

"1.  The jury are instructed that it is the duty of the car-
rier of passengers to use the highest degree of care, diligence and
skill, which means the highest degree of care, diligence and skill
that a prudent and cautious man would exercise to prevent its
passengers from injuries by providing a reasonably safe track
and handling its trains in a careful and prudent manner in view
of the nature of said track; and if you believe from the evidence
in this case that plaintiff, while a passenger on defendant's pas-
senger train, and without fault on his part, was injured by rea-
son of defendant's said train running at a high rate of speed

over a sink or low place in its track, and that defendant was negligent in permitting said sink or low place in said track, or in running over same at a high rate of speed, then your verdict should be for plaintiff."

"2. The jury are instructed that if they believe from the evidence in this case that plaintiff was injured while traveling as a passenger upon one of defendant's passenger trains, and that said injury was caused by a defect in its railroad track, the law presumes that the defendant was negligent, and the burden of proof is upon said company to show by a preponderance of the evidence that the injury was not caused by its negligence."

"3. You are instructed that if you find for the plaintiff you will assess his damages at a sum that will fairly compensate him for the bodily injuries sustained and pain suffered by him, if any, the expense of his sickness resulting from the injury, and the pecuniary loss shown by the evidence to have been sustained by him by reason of his inability to attend to his business."

The following prayers were granted at the instance of appellant:

"2. The jury are instructed that in this case the law raises no presumption against the defendant, and, should the jury believe from the evidence that plaintiff's finger was injured while he was a passenger on one of defendant's trains, yet that fact alone would not enable him to recover in this case."

"3. The court instructs the jury that the mere fact that plaintiff's finger was injured while he was a passenger on defendant's train does not establish a cause of action against the defendant, but the proof must go further and establish by a preponderance thereof that said injury was due to some act, either of omission or commission, on the part of this defendant, its agents or employees."

"4. The court instructs the jury that if they believe from the evidence that the injury to plaintiff's finger happened by and through a mere accident, they will find for the defendant."

"6. The court instructs the jury that passengers traveling in railway trains assume the ordinary risks and inconveniences incident to the running and management of trains, among which are the ordinary rocking, swinging, jerking or jolting of the train while in motion."

The court refused the following prayers:

"1.   The jury are instructed to find for the defendant."

"5.   The court instructs the jury that railway companies are not insurers of passengers, and they are not liable for injuries received by passengers by being carried on their trains if the injury was a result of mere accident, the happening of which could not by ordinary care and prudence have been foreseen or anticipated."

"7.   You are instructed that it was the duty of the plaintiff to keep his seat while the train was in motion; and if you believe from the evidence that plaintiff was unnecessarily standing up in the car at the time of the injury, and that he would (not) have been injured had he not been standing up, then you are instructed to find for the defendant."

"9.   Although the jury may believe from the evidence that plaintiff was injured as claimed, and that said injury was the proximate result of the jerking, lurching or swinging of defendant's train, yet, if they further find and believe from the evidence that said rocking, lurching and swinging of the train was a usual and ordinary incident to the running of passenger trains, such as the one which plaintiff was on, you will find for the defendant."

Exceptions were duly saved to the rulings of the court in giving and refusing prayers for instructions. The verdict and judgment were for $500.

A motion for new trial, assigning as error the rulings of the court on the prayers for instructions, and that the verdict was excessive, was presented and overruled, and this appeal was duly prosecuted.

*Mehaffy, Williams & Armistead,* for appellant.

1.   This was a mere accident, such as might have happened to any person on any road. Travellers necessarily assume the usual and ordinary risks of travel and of the mode of travel adopted. Railroad companies are not insurers of passengers, nor are they required to insure against any possible contingencies. 2 Hutchinson on Car., 2 Ed., § 900; 79 Tex. 608; 15 S. W. 584; 10 N. H. 481; 37 Mo. 240; 90 Am. Dec. 382. The mere happening of an accident, disconnected from proof showing it to

have been due to some defect of carriage, does not raise a presumption of negligence against the company; but the proof must show that the accident was due to some defective condition, before this presumption is raised.  52 Ark. 517.

2.  The first and second instructions ought not to have been given, because they are abstract, and because they are based upon the idea of showing that the injury was caused by a defect in the track, whereas there is no proof of any such defect.

3.  The fifth and ninth instructions requested by appellant should have been given.  2 Hutchinson on Car., 3 Ed., § 903; 65 Ind. 526.

*Webber & Webber,* for appellee.

1.  Appellee was a man of 29 years' experience in railroad travel, certainly of sufficient experience to enable him to maintain his equilibrium under any ordinary conditions aboard a moving car.  He testifies that at the time he was standing on both feet, in perfect control of his equilibrium.  Obviously the lurch was caused by a depression in the track, and the jury had the right to infer from the evidence that it was such a serious defect that it should have been remedied.  Such a lurch as is testified to here is not one of the usual and ordinary risks assumed by passengers on railroad trains.

2.  The first instruction fairly submitted to the jury the only issue in the case from appellee's viewpoint, and correctly states the law.  60 Ark. 550.

3.  The fourth and sixth instructions requested by appellant and given by the court are substantially the same as the fifth and ninth, which for that reason the court refused.  Why multiply instructions on the same points?  This court condemns such practice.  38 Ark. 334, 346; 59 Ark. 140, 143; 74 Ark. 33.

Wood, J., (after stating the facts.)  The evidence was sufficient to sustain the verdict, that appellant "was negligent in failing to maintain a reasonably safe track, free from low places and defects."  The testimony of appellant tended to show that the injury to appellee might have been produced by appellee being "off his balance" while the train was making a curve. But appellee's evidence was in sharp conflict with this, and the question was one for the jury.

Appellant contends that the court erred in not submitting

to the jury its theory and contention, presented in its prayers numbered five and nine, that the injury was the result of an accident, such as was a usual and ordinary incident to the running of passenger trains. But these prayers were fully covered by instructions four and six given at the instance of appellant. The court did not err in refusing to multiply instructions "announcing in effect the same legal principles." *Hanger* v. *Evins,* 38 Ark. 334; *Railway Company* v. *Thomasson,* 59 Ark. 140; *Furlow* v. *State,* 72 Ark. 384; *Goss* v. *State,* 74 Ark. 33.

The court did not err in giving instruction number one. The instruction announced the correct rule of law applicable to the evidence adduced. The verbiage may not be as explicit as it should be, but the court evidently intended to conform to the rule announced in *Railway Company* v. *Sweet,* 60 Ark. 550, and to tell the jury that it was the duty of appellant company to exercise "the highest degree of care which a prudent and cautious man would exercise, reasonably consistent with its mode of conveyance and the practical operation of its road, to provide a reasonably safe track," etc. Such, we think, is a fair interpretation to be put upon the language of the instruction. If appellant conceived that the verbiage conveyed a different meaning, it should have asked the court to correct it. Not having done so, it is not in a position to complain. *St. Louis, .I. M. & S. Ry. Co.* v. *Barnett,* 65 Ark. 255; *Mt. Nebo Anthracite Coal Co.* v. *Williamson,* 73 Ark. 530; *St. Louis, I. M. & S. Ry. Co.* v. *Bowen,* 73 Ark. 594.

The judgment is affirmed.