FOURCHE RIVER LUMBER COMPANY *v.* BRYANT LUMBER COMPANY.

Opinion delivered February 20, 1911.

1. APPEAL AND ERROR—WAIVER OF EXCEPTION.—The Supreme Court will not review the ruling of the trial court in permitting evidence to be introduced if no exception thereto was saved or preserved in the motion for new trial. (Page 632.)

2.  TENDER—WHEN UNNECESSARY.—A party to a contract may sue the other party without offering to perform his portion of the contract if the other had notified him in effect that he would not comply with the contract in any event.  (Page 633.)

3.  ARBITRATION AND AWARD—CONSTRUCTION OF CONTRACT.—Where two rival lumber companies agreed that a railroad to be built by one of them should transport the other's lumber on the same terms and without discrimination in favor of the former, and that all disputes between the lumber companies should be settled by arbitration, a dispute as to the division of interstate freight rates on lumber delivered to other carriers was within the terms of the arbitration agreement. (Page 634.)

Appeal from Pulaski Circuit Court, Second Division; *F. Guy Fulk,* Judge; affirmed.

### STATEMENT BY THE COURT.

The parties to this suit are rival lumber companies owning timber and timber lands in the same territory.  To successfully operate, it was necessary to build a railroad to convey the timber to their mills.  One of the companies had secured a pass, the only one feasible for the construction of the road through the hills, located its line and procured a charter for the railroad, and was sucessful in having a charter denied the other company by the State Board of Railroad Incorporators, which nevertheless commenced to build a railroad across and over the lands of the company owning the pass, and had already a located line, and such action produced a controversy and a clash between them detrimental to the interests of both.

On the 3rd day of August, 1905, they entered into a contract, stating it was their desire "to settle their controversies, in so far as they affect the future rights of any and all of the parties and their successors as to the building, maintaining and operating a railroad and the granting of rights of way, hauling freight, etc."  And "mutually agreed to settle said controversy" upon the terms set out.

The contract provided that the Fourche River Lumber Company would cause the timber of the Bryant Lumber Company, owned and after acquired as shown by the Perry County records, to be hauled "when loaded on its cars and on its railroad by the Bryant Lumber Company," for a period of ten years by the Fourche River Valley & Indian Territory Railroad Company, or to a connecting carrier, without a transfer of freight from one

car to another, at a price to be fixed by arbitration under the contract; the connecting of the Bryant Lumber Company's tram roads or railroads with its railroad and with the railroad of the F. R. V. & I. T. Rd. Co., as built, or after constructed for hauling its timber, the hauling of its engines, cars and freights; that it would cause the perfecting of the organization of said F. R. V. & I. T. Rd. Co., whose articles of incorporation were on file in the office of the Secretary of State, and the acquiring and operation of the line of railroad referred to. It guarantied the completion of the construction of the road called for within five years from the date of the granting of the charter, and that the work of construction should progress as rapidly as possible, one-fifth of the part unconstructed to be built each year, it being understood that if an amount in excess of one-fifth should be constructed one year, such excess may be deducted from what the company is required to build in a succeeding year, and further the Fourche River Company agreed to pay any difference between the price charged by the railroad company for hauling the timber owned or afterwards acquired by the Bryant Lumber Company and the price fixed for said service by the terms of the contract; and that said railroad company would perform the railroad service for which it (Fourche River) bound itself in this contract.

The Bryant Lumber Company agreed to join with the incorporators of the said F. R. V. & I. T. Rd. Co. in an effort to secure the charter in accordance with the articles of association and map already filed in the Secretary of State's office; that said railroad company, when incorporated, could occupy the right-of-way now occupied by the railroad of the Fourche River Company over the lands of the Bryant Lumber Company, for which it agreed to execute necessary deed of conveyance as soon as the incorporation was perfected. It also gave a free right-of-way over its lands owned or after acquired for the construction of the remainder of said road, and agreed that the Fourche River Company should have free right-of-way over its lands owned or after acquired for building tram roads to reach its timber.

There were several mutual agreements, a board of arbitration composed of Judge Robert J. Lea and two other men, one to be selected by each of the parties, was provided for and given authority to settle certain matters and any other differences that

arose between the parties as to the details of carrying out the contract, which authority with the propositions submitted for arbitration and the award thereon are set out in the complaint as follows:

"That the price for hauling future acquired timber of the Bryant Lumber Company over the railroad of the F. R. V. & I. T. Rd. Co. shall be fixed by a board of arbitrators, composed of Judge Robert J. Lea and two other men, one to be chosen by each of the parties hereto, and said board shall have the authority to settle any other conditions that may arise between the parties hereto as to the details of carrying out this contract, such as hauling, loading and unloading of timber and other freight, the time when and the manner in which it is to be done, so that the Bryant Lumber Company shall be secured against any discrimination in favor of the Fourche River Lumber Company in the transaction of its business. The Fourche Company shall be required to carry timber and other freight equally and impartially without discrimination for or against the Bryant Company, and it is understood that each party shall have such fair and equal opportunities, so that they can compete in all respects with each other in the purchase and holding of lands and other interests in that territory and on and with the railroad, and the Fourche Company agrees that neither it nor the F. R. V. & I. T. Rd. Co. will do any act that will prevent the Bryant Lumber Company from having a fair opportunity to compete with the Fourche Company in all respects in the purchase, holding and sale of lands and timber or products thereof in that vicinity, or in the transportation of freight over the said road."

That it had complied with all the terms, conditions and requirements of the contract, but that defendant did not comply with the contract on its part. That the Fourche River Lumber Company refused to permit it to load its logs as the contract required, declining to put in a switch so that it might load its logs, refused to establish the switches or maximum grades of curves and curvatures for the building thereof, and refused to secure to plaintiff the same freight concessions from the Fourche River Valley & I. T. Rd. Co. that the defendant enjoyed, and that on April 17, 1907, it submitted the following proposition to be arbitrated:

"First.   That the Bryant Lumber Company be permitted to load logs on the railroad on all places where the Fourche River Lumber have loaded and are loading logs, but Bryant Company shall load between 4 P. M. and 9 A. M. of the next day.

"Second.   That the unloading switch on the Fourche River be put in at once.

"Third.   That the maximum for grades and curvatures for the building of switches be established at once.

"Fourth.   That the Fourche River Lumber Company through the Fourche River Valley & Indian Territory Railroad Company shall secure to the Bryant Lumber Company from the Fourche River Valley & Indian Territory Railroad Company the same freight concessions as are now enjoyed by the Fourche River Lumber Company through its interest and the interest of its owners in the Fourche River Valley & Indian Territory Railroad Company."

That the board of arbitrators met on the 24th day of October, 1907, both plaintiff and defendant being present and represented by attorneys, and made the following award:

"The arbitrators grant the first demand with the proviso that all cars be loaded between 4 P. M. and 9 A. M. of the next day.

"On the second and third propositions, the board rule that the maximum curve shall be twelve degrees and the maximum grade of switches be one and one-half per cent, except where there is a reversed curve, when it may be two per cent, and that the Fourche River Lumber Company be required to lay the iron on the unloading switch at Fourche River whenever the ties are laid and these grades and curves are conformed to.   This and all other switches are to have proper rises and dumps at the end to prevent cars running off.

"The Fourche River Lumber Company protests against the arbitrators taking jurisdiction of the fourth proposition on the ground that it is beyond the terms of the submission; but the board (Mr. Grayson dissenting) overrules the objection, and rules that the Fourche River Lumber Company be required to pay the Bryant Lumber Company the same differentials that the Fourche River Valley & I. T. Rd. receives on interstate ship-

ments of the Fourche River Lumber Company, to which ruling the Fourche River Lumber Company excepts.

[Signed]    "Robt. J. Lea,
"W. Grayson,
"C. W. Lewis."

That both parties submitted said proposition and all differences and disputes in reference thereto to the arbitrament and final determination of said Judge Robt. J. Lea, W. Grayson and C. W. Lewis, chosen as provided in the contract between the parties, and that they arbitrated and determined concerning the controversy and conditions between the parties as declared in the award set out.

That plaintiff duly performed all the conditions of said award on its part, or offered to do so, but the defendant then and ever since has refused to perform the award on its part. That because of the failure of defendant to perform the award on the fourth proposition by paying to it the same differentials that it received from the Fourche River Valley & I. T. Rd. Co. on through rates over the Rock Island, it was damaged in the sum of $2,845.20, which sum it claimed with interest at 6 per cent.

That defendant refused to comply with the award made on the first proposition, and removed its track so that it could not comply with it, and that plaintiff was damaged thereby in the sum of $1,500.

That on the second proposition and award, defendant refused and failed to comply with it, and by such failure plaintiff was damaged in the sum of $2,500, and prayed judgment for $6,845.20 with interest.

Defendant denied that plaintiff complied with all the terms, conditions and requirements of the contract set out, and that it failed to comply with any part of said contract binding upon it; that it had refused to permit the plaintiff to load its logs as the contract required; that it had declined to put in any switch which it was required to put in under the contract; also denied that it had refused to establish the maximum for curves and curvatures for the building of switches; that it had refused to secure the plaintiff any freight concessions from the F. R. V. & I. T. Rd. Co., which that company could lawfully grant, which were contemplated in the contract between the parties. It denied that

the fourth proposition submitted to the board of arbitrators set out in the complaint was within the terms of the submission to arbitration at the time; that the board of arbitration had authority to make the award thereon set forth in the complaint. It denied that the defendant wrongfully removed any portion of the track of said railroad company; demurred to that part of the complaint seeking damages for the refusal of defendant to perform the fourth item in the award of arbitrators and to pay the plaintiff the differentials received by the Fourch River Lumber Company on the plaintiff's logs, which demurrer was overruled, and the plaintiff excepted.

The contract between the parties, portions of which have already been stated and set out in the complaint, was introduced and read in evidence. The evidence tended to show that the Fourche River Valley & I. T. Rd. Co. (hereafter called the Territory Railroad) had a traffic arrangement with the Rock Island embracing lumber and timber, by which the Territory Railroad received a division of the through rate for freight originating on its lines, which it had enjoyed since three or fourth months after it began operating trains. The amount of division allowed that company is 2 cents to Memphis, 3 cents to Thebes or St. Louis, and 3½ cents to Oklahoma points. This was allowed to it out of the through rate published and only for lumber originating on its line. The Fourche River Lumber Company's plant is on the Territory Railroad, about a mile from the Rock Island Railroad, where its timber is manufactured and comes to the latter road as lumber. The traffic manager of the Rock Island testified that the mill of the Bryant Lumber Company was on the Rock Island, a short distance from the junction of the Territory Railroad, and that the lumber when shipped out would take the interstate published rate from the point of shipment, the location of its plant; that it charged the Bryant Lumber Company $2 a car for switching from the Territory Railroad.

The award as set out in the complaint was also introduced in evidence. The testimony tended to show that appellee asked for the construction of an unloading switch that it might dump logs into the river; that it cleared the right-of-way and built the embankment or dump therefor and put the ties thereon, and that the Fourche River Lumber Company refused to lay iron upon it in accordance with its agreements under the contract, claiming

that it was not built as it should have been; that the grade was changed from what was first given the engineer, and the dump was constructed in accordance with the change as made; that the work in the construction of this proposed switch cost the Bryant Lumber Company $1,100, and that it had been compelled to pay for hauling logs from the Rock Island $582 that it expected to unload on this switch and float down the river, if it had been constructed; that, after the award was made, the company still declined. It was shown that the embankment practically complied with it, and the Fourche Company still refused to build the switch, and denied that it would do so, even if it were finished according to the award as understood by it; that the appellee was damaged in the sum of $550 and $300 because of its failure to build these two switches in section 27; that the Fourche River Company built an extension to the end of the Territory Railroad Company on the dump or embankment and right-of-way already constructed for the extension of said Territory Railroad Company beyond Camp and hauled its logs over said extension, and, notwithstanding the award on this point, took up its said track, and declined and refused to allow appellee company to haul its timber thereon, and that appellee lost some of its timber, not being able to remove it within the time limit in the contracts, and was compelled to pay out to the contractor $500 in order to secure a release from him for its failure to perform a contract with him to pay for delivery of logs to be hauled over that part of the railroad, and that certain of its timber delivered there for transportation was destroyed, there being no way to bring it out; that under the terms of the contract with the Fourche River Lumber Company it was bound to have caused the construction of the said Territory Railroad beyond this point, Camp, to the end of the said extension by the Fourche Company and further before this time; that the officers and stockholders of the Fourche River Lumber Company are the same as the officers and stockholders of the said Territory Railroad Company, except that maybe there are two or three minor stockholders in said railroad, possessing one share each; that said railroad gets a division of the through rate on all shipments of lumber of the Fourche River Lumber Company, from its mills to the markets outside the State; that such divisions are 2 cents to Memphis, 3 cents to Thebes or St.

Louis and 3½ cents to Oklahoma points; that the Fourche River Lumber Company protested against the submission of this point relating to these divisions of rates to the arbitrators, and denied the authority of the arbitrators to pass upon it under the contract, and refused absolutely to perform the award after it was made.

That the Bryant Lumber Company shipped certain cars of lumber from its mill manufactured from lumber hauled over the said Territory Railroad. "The cars came off the line of the Indian Territory Railroad" as one witness expressed it—containing a little over 13¼ million pounds upon which a division or pay from the Fourche Company was claimed and figured at 2 cents, amounting to $2,650.35. That nearly all of this timber went to Oklahoma points and the remainder to Kansas and Missouri.

The jury returned a verdict in favor of the Bryant Lumber Company for $3.978, and the Fourche River Lumber Company appealed.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. It is for the jury, after a statement of the facts by the witness showing the extent of his injury and any other matters pertinent to the inquiry, to estimate the amount of the damages the party has sustained. 47 Ark. 497; 59 Ark. 105; 67 Ark. 375; 71 Ark. 302; 68 Ark. 218.

2. Before a party can recover on an award which requires something to be done upon his part, he must allege and prove performance of the award on his own part. 2 Bosw. 116; 18 N. J. L. 294; 12 Wend. 591; 28 Ala. 475; 22 Pick. 417; 7 B. & C. 494; 1 Saund. 32; 5 Mason, 244.

3. Under the circumstances of this case, if appellee saw fit to make a contract to deliver logs at a point where he had no privileges of shipment, he must bear the loss. 56 Ark. 280.

4. The award was beyond the powers of the board of arbitration, and, moreover, it amounted to a payment to appellee of a rebate in violation of the Hepburn Act, to grant which would expose appellant to heavy penalties. Kirby's Dig. § 6804; 10 Interstate Com. Rep. 193; 209 U. S. 56.

*Mehaffy, Williams & Mehaffy,* for appellee.

1. It is competent for a witness, in an action for damages, to give his opinion as to the extent or amount of damages, *after stating his means of knowledge.* 67 Ark. 371. In this case means of knowledge was first stated, and no objection was made nor exception saved to the testimony. 44 Ark. 103; 73 Ark. 530; 77 Ark. 418; *Id.* 27.

2. The testimony conclusively shows that the dump was built in accordance with the award of the arbitrators, and that appellant refused to put its rails there. It was a question of fact for the jury to decide whether or not there had been a substantial compliance with the award, and whether appellant refused to lay the steel. 68 Ark. 580. It is not necessary to allege and prove performance in order to maintain a suit on an award. The plaintiff may show performance, or an offer to perform, or a legal excuse for nonperformance. 2 Bosw. 116; 18 N. J. L. 294; 28 Ala. 475.

3. The facts of this case show that the Interstate Commerce Act is not involved in any way. There is no question of rebate here.

KIRBY, J., (after stating the facts).   1. It is contended that there was no testimony to support the verdict as to damages for delay in building the two switches in section 27, but there was shown to have been delay in the building of these switches caused by appellant, and the manager of the Bryant Lumber Company swore that it was damaged by reason of such delay in the sum of $550 for the one, and in the sum of $300 for the other. His statement was introduced without objection, and without any exception saved and preserved in the motion for a new trial, and appellant thereby waived any right to complain of the testimony here. *Texas & St. Louis Ry. Co.* v. *Kirby,* 44 Ark. 103; *Mt. Nebo Anthracite Coal Co.* v. *Williamson,* 73 Ark. 530; *Ince* v. *State,* 77 Ark. 418; *Planters' Mutual Ins. Assoc.* v. *Hamlin,* 77 Ark. 27. Having been permitted to go to the jury without objection or cross examination of the witness and not excluded on motion as it could have been done, it will be presumed that there were matters and facts upon which to base the estimate which an examination would have disclosed, and the jury were authorized to weigh it accordingly.

2. As to failure to complete the unloading switch, there was conflict in the testimony, but there was testimony from which the jury might have found that the dump and embankment was constructed in substantial compliance with the award of the arbitrators; that appellant refused to complete it after such award, and stated that it would not do so without regard to its construction if built in exact accord with the finding of the arbitrators. This being true, there was no necessity for any tender of further performance by appellee. An offer to perform by appellee would have been useless, as shown by the testimony, and it was not necessary to make it. It was waived by appellant's conduct. *Scott* v. *Jester,* 13 Ark. 437; Hunt on Tender, § § 55-6; *Bluntzer* v. *Dewees,* 79 Texas 272; *McPherson* v. *Fargo,* 74 N. W. 1057; *Union Central Life Ins. Co.* v. *Caldwell,* 68 Ark. 505, 521.

The testimony as to the damage by reason of the failure to construct this switch was also conflicting. It was stated, however, by one witness, that the company had cleared the right-of-way and built the embankment at a cost of $1,100, and had supplied two carloads of ties that were worth from 16 to 18 cents each. No objection was made to the introduction of this testimony; and while it was contradicted by that of the engineer in the estimate of how much work was actually done, and how much it ought to have cost to do it, the jury found in favor of appellee on the point.

3. Since appellant was bound by the terms of its own contract first made to have a railroad constructed beyond the point, Camp, to where appellee tendered its logs for shipment and before that time, and since it had in fact constructed a railroad over the right-of-way and embankment of the said Territory Railroad Company, over which it was having its own logs hauled, and those of appellee could have been by it transported, it was bound by the terms of the contract and the award to receive said logs there, and liable for the resultant damage for refusing to do so. The testimony showed that there was no other way to get the timber out than over this road; that a large amount of it was lost and destroyed, and that the Bryant Company was compelled to pay $500 for the release from the person with whom it had contract for the delivery of the timber because of its breach of

contract in not permitting it to be performed. The witness Faisst estimated the company's damages on this point at $1,500, without objection, after stating the items and facts upon which it was based and the elements entering into it.

4. We hold that the point submitted to arbitration was within the scope and purview of the contract made between the parties, and, the award having been made, appellant was bound to its performance and liable in damages for its failure. It secured valuable rights by this contract, upon the theory that both companies should be placed in like condition on equal terms for the delivery of timber and sale of lumber manufactured from timber shipped over said road that was and is in fact owned by the same persons who own the appellant company with which this original contract was made. Since they in effect have an advantage in the sale of lumber, the timber for the manufacture of which comes over said Territory Railroad, of the division received by said company as an originating line from the connecting carrier, we see no reason why appellants should not pay to appellee company an amount equal thereto upon its lumber manufactured from logs delivered over said road, as the arbitrators have found that they should do. There was testimony on this point showing the amount of $2,650.35, figured at a less rate than the division of rates shown to be received by said Territory Railroad.

Nothing is being asked from the Territory Railroad Company in this suit, and only a performance of its contract by appellant in accordance with the award made thereon under its terms. The verdict of the jury was for the lump sum of $3,978 damages, a little more than half of the amount claimed for all the injuries complained of, and there was no finding of any sum on any separate claim made under the award. It shows that the jury did not accept the largest statement of damages of any witness, and the testimony is sufficient to sustain their verdict.

The judgment is affirmed.