St. Louis, Iron Mountain & Southern Railway Company

v. Wright.

Opinion delivered October 28, 1912.

1. Carriers—injury to passenger—complaint.—A complaint against a railroad company for injury to a passenger should state with as much definiteness as possible the time, the kind of train on which she was riding, and the particular place where the injury occurred. (Page 272.)

2. Continuance—surprise—waiver.—Defendant waived his right to a continuance on account of surprise because plaintiff was permitted to amend his complaint so as to change the issue where he amended his answer to meet the changed issue and went to trial without asking for a continuance.  (Page 272.)

3. Same—discretion of court.—Applications for continuance are addressed to the sound discretion of the trial courts.  (Page 273.)

4. Carriers—injury to passenger—question for jury.—Where there was evidence tending to prove that a passenger was injured by the train being negligently started before she had time to reach a seat, it was not error to refuse to direct a verdict for the railway company. (Page 273.)

5. Same—injury to passenger—instructions.—In an action against a carrier for injury to a passenger, instructions that it was the duty of defendant to stop its train long enough to allow passengers reasonable time to board said train and reach a seat, that a reasonable time is such time as one of ordinary prudence should be allowed to take, that the carrier should consider any special condition peculiar to the passenger and give reasonable time under the circumstances, and that if defendant did not give plaintiff a reasonable opportunity to board the train and reach a seat it was liable, were not objectionable as requiring defendant to stop its train long enough for plaintiff to board same and reach a seat.  (Page 274.)

6. Same—duty to allow passenger time for boarding train.—A passenger is entitled to a reasonable time to get aboard a train after he is given an opportunity to do so; and if, without allowing such reasonable time, the train is started, and the passenger is injured, the railway company is liable.  (Page 274.)

7. Instruction—assumption of facts.—An instruction, in a personal injury suit, that the jury should consider, among other elements of damages, such pain "as she will necessarily endure in the future resulting from her injury, if any," was not erroneous as assuming that she would suffer pain in the future.  (Page 275.)

8. Carriers—injury to passengers—instructions.—In an action for injury to a passenger on a mixed train, an instruction that, while plaintiff assumed the risk of necessary jars of the train, defendant was

not relieved from using the same high degree of care in handling its train to avoid injuring plaintiff as if it were a regular passenger train, etc., was not inconsistent with another instruction that a passenger on a mixed train assumes the ordinary risks incident to travel on such trains, but that the railway company owes to such passenger the duty to exercise the highest degree of care, consistent with the practicable operation of such train, to protect the passenger from injury. (Page 275.)

9. DAMAGES—PERSONAL INJURIES—EXCESSIVENESS.—In an action for personal injuries an award of $1,550 was not excessive where plaintiff suffered great pain for a year, where her injured shoulder was an inch and a half shorter over the shoulder blade than over the other shoulder blade, and where her injuries were probably permanent. Page 277.)

Appeal from Pike Circuit Court; *Wm. P. Feazel,* Special Judge; affirmed.

### STATEMENT BY THE COURT.

Appellee brought this suit against appellant to recover damages for injuries received by her while embarking on one of appellant's trains. The material facts are as follows:

On the 5th day of May, 1911, appellee purchased a ticket for herself and children from Amity to Glenwood, both being stations on appellant's line of railroad. She intended to go on what was called the log train, which was a mixed passenger and freight train. When the train pulled up to the station at Amity the conductor called out, "All aboard," and appellee immediately proceeded to get on the train. The conductor helped her on the platform with her children, and she started into the car as fast as she could go. She had her baby in her arms, and her little boy and two little girls preceded her into the car. She was back of them, urging them along as fast as possible, and just as they got in the door of the car the train started with a sudden jerk which threw appellee down. When she fell, the right side of her head and shoulder hit the upper part of the first seat in the car. She held her baby in her left arm when she fell. The seat that she struck was about ten feet from where she was when the jerk came. She had not gotten inside the car when the jerk came, but was just in the doorway. Her older little girl, who was ahead, had gotten far enough in the car to catch hold of the first seat on the left and keep herself and sister from falling. The jerk of the

train knocked her little boy over as fast as he could get up. Appellee told the conductor about the injury she received. She proceeded on her journey, and as soon as she got home she examined herself and found that she had a long black bruise about four inches long on her shoulder and a bruise on her head. She testified that her shoulder looked blue for a long time afterwards, and that she has never had the use of her right arm since, and that she can not lift a bucket of water with that arm; that she had always been a stout woman, and never had had any trouble with her arm before the accident; that in November or December, 1911, after the accident, her shoulder got so bad she had to send for a doctor; that it is no better now, and gives her a great deal of pain; that up to the time she sent for the doctor she treated her arm herself with liniment; that she has suffered a great deal of pain and still suffers pain; that the pains are mostly in her shoulder, head and through her chest.

Doctor J. E. Baker, for the plaintiff, testified: "I examined appellee's arm and shoulder three or four months after she said she received the injury. I found at that time a place of discoloration between her shoulder blades. She seemed to be suffering considerable pain. I did not take any measurements at that time, but the injured shoulder blade was considerably to one side and flattened. It seemed that one edge was knocked down. I prescribed rubbing, massaging and liniment. Later on I took two measurements, and found that the injured shoulder was an inch and a half shorter over the shoulder blade than it is over the other shoulder blade. I think that a blow similar to the one appellee sustained would have a tendency to produce the condition she is in. I believe she is liable not to have good use of her arm. She can't bear to have it raised above a level. Such an injury would have a tendency to produce pain, which might last an indefinite time. Any severe lick on the point of the shoulder could produce a case similar to this, and it might knock the shoulder blade loose from the muscles and flatten the shoulder blade. I think that nothing but a blow of some kind could produce a similar result unless it might be possible for some kind of rheumatism to do it. I think there is an indication that her injury might be permanent."

Other facts will be stated in the opinion. The jury returned a verdict for appellee in the sum of $1,550, and the case is here on appeal.

*E. B. Kinsworthy, W. V. Tompkins, R. E. Wiley* and *W. G. Riddick*, for appellant.

*George A. McConnell*, for appellee.

Hart, J., (after stating the facts).    1.   Counsel for appellant contend that the court erred in refusing to grant appellant's motion for continuance.   The original complaint alleges that appellee received her injuries on April 5, 1911. When the case was called for trial on March 21, 1912, appellee asked the court to amend her complaint by alleging that she received her injuries on May 5, 1911.   This was granted, and thereupon the appellant was given permission to change its answer to meet the amendment of the complaint.   Then both parties announced ready for trial, and a jury was impanneled to try the cause.   While counsel for appellee was stating her case to the jury, appellant asked leave of the court to file a motion for continuance.   The motion alleged that appellant was taken by surprise when appellee amended her complaint so as to change the date on which the injury occurred from April 5, 1911, to May 5, 1911, and that it was not prepared to meet this change in the date.

The complaint should state with as much definiteness and certainty as possible the time and kind of train and the particular point where the injury occurred.   This should be done in order that the railroad company might be enabled to prepare for its defense and avoid the necessity of subpoenaing an unnecessary number of witnesses and therefore possibly decrease the efficiency of the service of its trains and also to avoid unnecessary expense.   So, if the motion for a continuance had been made at the time appellee was given permission to amend her complaint, the motion should have been granted. In the instant case, however, appellant did not do this.   It amended its answer to meet the changed issue and elected to go to trial without asking for a continuance.   As far as the record discloses, it knew as much then as it did subsequently about the necessity of having new witnesses to meet the changed condition of the pleadings.   The injury occurred on a branch

line of appellant's line of railway where, presumably, appellant had but few trains and train crews.   The general rule is that the granting or refusing a continuance is intrusted to the judicial discretion of the trial court, and it is an abuse of that discretion only that is a ground for reversal.   Having elected to go to trial under the changed condition of the pleadings and not having shown any additional grounds than that before appellant elected to go to trial, the court did not abuse its discretion in refusing to grant the continuance.

2.   It is insisted by counsel for appellant that the court erred in refusing to direct a verdict for it.   This was a suit by appellee to recover damages for injuries received while getting on one of appellant's trains, which carried both freight and passengers.   In the case of *St. Louis, I. M. & S. Ry. Co. v. Hartung*, 95 Ark. 220, the court in discussing the duty of carriers to passengers getting on mixed trains, said:

"The carrier of passengers on mixed trains is required, like carriers on regular passenger trains, to furnish reasonably safe means of entering the car and to hold the car in a reasonably safe manner for a reasonable time to permit those who wish to enter to do so with safety.   If, therefore, while the passenger is getting on the car, the train is negligently started, or so negligently handled by permitting other cars to be thrown against it with such violence that the passenger is injured, the carrier will be liable.   The time that is allowed a passenger to enter a train depends to a great extent on the particular circumstances of each case and of the passenger, the physical ability of the passenger, his incumbrance with baggage and his being accompanied by those who are dependent upon him for attention may all be taken into consideration in determining whether a reasonable time has been afforded the passenger in getting on board the train."

Tested by this rule, the court did not err in refusing to direct a verdict for appellant.   The testimony of appellee shows that, as soon as the conductor announced that the train was ready to receive passengers, appellee and her children started to get on the train and proceeded with as much dispatch as possible to board the train and to get to their seats. The accident occurred just as appellee reached the door of the train and before she had time to walk to a seat.

3. The court at the request of appellee, among others, gave the following instructions:

"No. 3. You are instructed that it was the duty of the defendant, as a carrier of passengers, to stop its train long enough to allow the plaintiff and other passengers a reasonable time to board said train and reach their seats."

"No. 5. You are instructed that the reasonable time which the defendant was required to hold its train for passengers to get on and off is such time as a person of ordinary care and prudence should be allowed to take, and in determining this reasonable time it is the duty of the carrier to take into consideration any special condition peculiar to the passenger, and to give a reasonable time under the existing circumstances, as they are known, or should be known, by its servants, for passengers to get on and off its train."

"No. 6. If you find that the defendant did not stop its train a reasonable time, giving the plaintiff a reasonable opportunity to board said train and reach her seat, then the defendant has failed in its duty to the plaintiff."

Counsel for appellant assign as errors the action of the court in giving the fourth and sixth of these instructions. Counsel insist that the effect of these instructions was to tell the jury that appellant should have stopped its train long enough for appellee to board the same and reach her seat. We do not think so. The instructions should be read together, and, when that is done, they fall fairly within the rule laid down in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Hartung,* above copied.

A passenger is entitled to a reasonable time in which to get aboard a train after he is given an opportunity to do so, and if, without allowing such reasonable time, the train is started, and the passenger is injured, the railway company is liable. The instructions referred to, when considered together, properly submit this question to the jury.

4. Counsel for appellant also assign as error the action of the court in giving the following instruction:

"No. 3. If you find for the plaintiff, in assessing her damages you will take into consideration her age and condition in life, the injuries sustained by her and the physical and mental pain and anguish endured by her on account of the injury,

if any, together with such as she will necessarily endure in the future, resulting from her injury, if any, together with all other facts and circumstances in the case, and assess her damages at such sum as you believe from the evidence will fully compensate her for the injuries."

They insist that the instruction assumes that future suffering would result to appellee from the injury and also insist that it is not supported by the evidence. We can not agree with appellant in this contention. The evidence on the part of the appellee tends to show that she suffered pain from the time she received the injury on May 5, 1911, to the time of the trial on March 21, 1912. She said she still suffered greatly from her injuries. The physician who attended her also stated that she appeared to suffer great pain, and that it was likely that her injuries would be permanent. Under the testimony, as set out in the statement of facts, the jury might have well found that appellee would continue to suffer pain in the future and that her injuries were permanent. We do not think that the instruction assumes that she would suffer pain in the future, but that fact was left for the jury to determine under the evidence.

5. Counsel for appellant also contend that the court erred in giving instructions numbered 7 and 8 to the jury, which read as follows:

"No. 7. You are told that while the plaintiff in taking passage upon a mixed train assumed the risk of necessary and usual jolts and jars, this did not relieve the railroad company from exercising the same high degree of care in the handling of its trains as if she was riding on a regular passenger train, to avoid injuring her. The risk of usual jolts and jars assumed by plaintiff is the risk incident to the mode of conveyance, and it does not relax the rule as to the high degree of care to be exercised by the servants of the defendant to avoid injuring passengers. So in this case, if you believe that the plaintiff was without fault and would not have been injured if the defendant's servants had exercised such high degree of care, your verdict should be for the plaintiff."

"No. 8. When a passenger takes passage on a mixed train, which carries both freight and passengers, such passenger assumes the ordinary risks and inconveniences that are

incident to the travel on such trains. But the railway company owes to such passenger the duty to exercise the highest degree of care consistent with the practicable operation of such train to protect the passenger from injury."

Counsel for appellant insist that the instructions are inconsistent and conflicting, and that both should not have been given. In the case of *Arkansas Southwestern Railroad Company* v. *Wingfield*, 94 Ark. 75, the court quoted with approval the following:

"But, as it is not practical to operate freight trains without occasional jars and jerks, calculated to throw down careless and inexperienced passengers standing in the car, the duty of the company is therefore modified by the necessary difference between freight and passenger trains and the manner in which they must be operated; and, while the general rule that the highest practical degree of care must be exercised to protect passengers holds good, the nature of the train and necessary difference in the mode of operation must be considered, and the company is bound to exercise only the highest degree of care that is usually and practically exercised and consistent with the operation of a train of that nature."

An instruction in precisely the same language as that contained in instruction numbered 7 was given by the court in that case, and in commenting upon the instruction the court held that it was in accord with the statement of the law above made and was not fairly susceptible of the meaning now sought to be given it by counsel for appellant. The same contention in regard to the instruction was made in that case as is made in the present one, and the court held that it was not prejudicial error to give the instruction. The instruction is not happily framed, but when it was considered by the jury in connection with instruction numbered 8, which immediately followed it, and which is conceded by counsel for appellant to be correct, we are of the opinion that the jury could not have been confused or misled by it. The correct rule applicable to such cases is laid down in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Purifoy*, 99 Ark. 366, which is as follows:

"Railroad companies are bound to the most exact care and diligence, not only in the management of trains and cars, but also in the structure and care of the track and in all the

subsidiary arrangements necessary to the safety of the passengers. While the law demands the utmost care for the safety of the passenger, it does not require railroad companies to exercise all the care, skill and diligence of which the human mind can conceive, nor such as will free the transportation of passengers from all possible peril. They are not required, for the purpose of making their roads perfectly safe, to incur such expenses as would make their business wholly impracticable, and drive prudent men from it. They are, however, independently of their pecuniary ability to do so, required to provide all things necessary to the security of the passenger reasonably consistent with their business and appropriate to the means of conveyance employed by them, and to adopt the highest degree of practicable care, diligence and skill that is consistent with the operating of their roads and that will not render their use impracticable or inefficient for the intended purposes of the same."

Tested by this rule, and, when considered together, we think the instructions contained a correct guide to the jury in determining the issues submitted to them.

6. Finally, it is contended by counsel for appellant that the verdict is excessive. The verdict was for $1,550. It is true the appellee did not seek the service of a physician until four or five months after she received her injuries, but she testified that during all of that time she suffered great pain and attempted to alleviate her suffering by the use of liniments and other home remedies. The trial occurred almost one year after she received her injuries, and she states that she was still suffering great pain at that time. Her physician stated that her injuries were severe at the time he visited her; that her injured shoulder was an inch and a half shorter over the shoulder blade than it is over the other shoulder blade. He stated it was his opinion that the injuries would be permanent. Appellee testified that at the time of the trial she could not lift her baby or a bucket of water with her injured arm and could not milk a cow with that hand. She stated that she suffered at that time great pain from her injuries. Under these circumstances, we do not think the verdict was excessive.

Therefore the judgment is affirmed.