DILLAHUNTY *v.* CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

Opinion delivered June 28, 1915.

1. CARRIERS—INJURY TO PASSENGER—DUTY OF CARE.—In an action for damages against a railroad company, growing out of personal injuries, an instruction that a carrier of passengers is required to do all that human care, vigilance and foresight can reasonably do, in view of the character and mode of conveyance adopted to prevent accidents to passengers, is erroneous, and was properly refused.

2. CARRIERS—INJURY TO PASSENGER—DUTY OF CARE.—While the law demands the utmost care for the safety of the passenger, it does not require railroad companies to exercise all the care, skill and diligence of which the human mind can conceive, nor such as will free the transportation of passengers from all possible peril.

3. CARRIERS—DUTY TO PASSENGERS.—Independently of their pecuniary ability to do so, carriers are required to provide all things necessary to the security of passengers, reasonably consistent with their

business, and appropriate to the means of conveyance employed by them.

4.   RAILROADS—INJURY TO PASSENGER—LOOKOUT STATUTE.—The lookout statute has no application to a case where plaintiff, a passenger, was injured while attempting to board a passenger train, after the same had stopped.

5.   CARRIERS — INJURY TO PASSENGER BOARDING TRAIN AT PLACE NOT A SCHEDULED STOP.—Although defendant's train was not scheduled to stop at a certain place, when it did stop there, and plaintiff attempted to board the same as a passenger, it was the duty of the carrier to stop sufficiently long to permit plaintiff to board the train.

6.   CARRIERS—DUTY TO PASSENGERS AT STATIONS.—A carrier is required at any station, when it is under the duty to anticipate the presence of passengers, to exercise the degree of care necessary, under the circumstances, for the protection of such passengers.

7.   RAILROADS—INJURY TO PASSENGER BOARDING TRAIN—PRESUMPTION.—Where a passenger, while attempting to board or alight from a train, is injured by the operation of the same, a presumption of negligence on the part of the defendant arises in favor of such passenger.

Appeal from Monroe Circuit Court; *Eugene Lankford*, Judge; reversed.

*C. F. Greenlee,* for appellant.

1.   Instruction 1, given at appellee's request, does not correctly state the law. It is immaterial whether the train was scheduled to stop at Wheatley for passengers or not; the fact is that it did stop there, and took on passengers when there were any waiting. The conductor was bound to see appellant if he looked in the direction of the platform, for she was in plain view. Likewise the other employees of appellee were there and should have taken notice of any passengers present, and if they failed in this, appellee was liable. 110 Ark. 522; *Id.* 232; 111 Ark. 129; 101 Ark. 424, 431, 432.

2.   An instruction given by the court on its own motion was erroneous in that it told the jury that if the plaintiff was negligent in getting on the train in the manner and at the time she did, she could not recover, even though they found that the defendant was negligent. 76 Ark. 524.

3.   It was error also to instruct the jury, in effect, that it was not the duty of appellee's employees to keep a

lookout even for passengers, unless a train was scheduled to stop at a certain point, etc.  83 Ark. 61-68.

*Thos. S. Buzbee* and *Geo. B. Pugh,* for appellee.

1.  The instructions given presented the case more favorably for the appellant than the law justified.

2.  The testimony on the part of appellee was contradicted by the appellant, and the verdict of the jury ought to settle the case in favor of appellee on the facts.

SMITH, J.  Appellant brought this suit to recover damages to compensate an injury sustained by her while attempting to board one of appellee's passenger trains at Wheatley, a station upon the line of appellee's road. Appellant came over the Missouri & North Arkansas Railroad from Cotton Plant to Wheatley, and arrived at the last named place about 10 o'clock P. M. of March 6, 1914, and she remained at the depot at Wheatley until 2:20 o'clock A. M. of March 7, at which time the train on which she expected to take passage arrived.  This train was going west, and the engine stopped just before reaching the crossing of the M. & N. A. Rd. The depot at Wheatley was north of the track of appellee, and the mailbox was at the depot.  The coach for colored people on which appellant undertook to embark, was east of the depot and east of the mailbox, and the mailbox was only a few feet north of the railroad track.  Appellant described the circumstances of her injury as follows:  "When the train run up to the depot and stopped, I come out of the depot and started back toward the colored coach, and met the porter, and I stepped up on the first step, but they didn't have any stool there, so I caught a-hold to the rod on this side next to the baggage car, and so I stepped on the first step, and the train made a snatch and threw me, and I went right down between the corner of the steps and the wheel, and the conductor, he held my hand to that left-hand rod until the train stopped, and the porter hadn't never got on the train.  There wasn't no one on the ground.  The conductor was out there on that little vestibule, and when the train stopped he held to my hand and the colored porter, he helped me on the train."

The testimony on the part of the appellee was to the effect that the conductor and the porter immediately after the train reached Wheatley both walked forward to attend to the changing of the mail pouches. That they saw nothing of any person who seemed to be trying to or desired to get on the train. That as soon as this change was made, they gave the signal for the train to proceed, and started back to get on themselves. That the train was moving when the conductor stepped on. That immediately after he had gotten on, he heard somebody scream, and looked around him and saw the appellant holding on to the train. He immediately pulled the bell cord to stop the train, and held the appellant to keep her from falling. The porter had not yet gotten on the train. The train stopped as soon as it could be stopped, and the porter, who had gotten to the steps by that time, helped the appellant on the train.

The proof further showed that Wheatley was not a regular station for this train, although it always stopped there on account of the crossing and for the exchange of mail, and that passengers were discharged there, and were also received at that station, and that passengers were so received and discharged on an average of about every other stop of the train.

(1)   A number of instructions were asked by the appellant, several of which were given, and exceptions were duly saved to the court's refusal to give the others. These instructions which were refused dealt generally with the degree of care which should have been exercised by the appellee in regard to prospective passengers; while others were prepared under the theory that the lookout statute applied to the facts stated.

Instruction numbered 1, for instance, asked by appellant, which was refused by the court, told the jury that carriers are required to do all that human care, vigilance and foresight can reasonably do in view of the character and mode of conveyance adopted to prevent accidents to passengers.

This instruction has been repeatedly condemned by this court. For the giving of an instruction containing this language, the case of *St. Louis, I. M. & S. Ry. Co.* v. *Purifoy,* 99 Ark. 366, was reversed. In condemning that instruction, Justice BATTLE, speaking for the court, in the case of *Ark. Midland Ry. Co.* v. *Canman,* 52 Ark. 417, said:

(2-3) " 'Railroad companies are bound to the most exact care and diligence, not only in the management of trains and cars, but also in the structure and care of the track, and in all the subsidiary arrangements necessary to the safety of the passengers. While the law demands the utmost care for the safety of the passenger, it does not require railroad companies to exercise all the care, skill and diligence of which the human mind can conceive, nor such as will free the transportation of passengers from all possible peril. They are not required, for the purpose of making their roads perfectly safe, to incur such expenses as would make their business wholly impracticable, and drive prudent men from it. They are, however, independently of their pecuniary ability to do so, required to provide all things necessary to the security of the passenger reasonably consistent with their business and appropriate to the means of conveyance employed by them, and to adopt the highest degree of practicable care, diligence and skill that is consistent with the operating of their roads, and that will not render their use impracticable or inefficient for the intended purposes of the same.' The above is the correct rule. 2 Hutch. on Carriers, section 897. The instruction did not conform to the above rule, and is in conflict with many of our later decisions."

(4) We think no error was committed by the court in refusing to give the instructions based upon the lookout statute, as that statute has no application to the facts here stated. A correct statement of the carrier's duty under such circumstances is found in the language quoted from the *Purifoy* case, and the court gave other instructions, to which no exceptions appear to have been saved, declaring the duty of the carrier under the circumstances.

But over the objection of appellant the court gave an instruction numbered 1, which reads as follows:

"You are instructed that if you find from the evidence that the train in question was not scheduled to stop for passengers, or to take on passengers at Wheatley, the conductor was under no obligation to look around for passengers when the train stopped at that place."

(5-6)   This is not a correct declaration of the law, and the giving of this instruction is error calling for the reversal of the case.   It would make no difference that this train was not scheduled to stop for and take on passengers at Wheatley, provided it did in fact take on and discharge passengers at that station, and the proof is undisputed that such was the custom of the railroad company.   The instruction given at the request of appellee is not a correct statement of the carrier's duty to passengers even at flag stations.   The carrier is required at any station where it is under the duty to anticipate the presence of passengers to exercise the degree of care necessary under the circumstances for the protection of such passengers.   The carrier can not say it was unaware of their presence, if its duty required it to know that passengers might be present, and where this duty rests upon it it is required to allow passengers a reasonable time to get aboard the train after they are given an opportunity to do so.   And if without allowing such reasonable time the train is started, and the passenger is injured, the railway company is liable.   *St. Louis, I. M. & S. Ry. Co.* v. *Wright*, 105 Ark. 269.

(7)   The proof in this case is directly conflicting; and under the evidence on the part of appellee, there is no liability on account of appellant's injury, and we would not reverse this case had the cause been submitted to the jury under proper instructions.   Appellant's evidence, however, if believed by the jury, is sufficient to warrant a recovery in her favor, for if she was injured in the manner stated by her, she was a passenger and was entitled to the benefit of the presumption which arises upon proof of injury from the operation of appellee's train.   In the re-

cent case of *Huckaby* v. *St. Louis, I. M. & S. Ry. Co.*, 119 Ark. 179, which cites other cases to the same effect, we said that, where an injury results, from the operation of the train, to the passenger while boarding or alighting from the train, the presumption of negligence arises in favor of such passenger.

For the errors indicated, the judgment will be reversed and the cause remanded for a new trial.