WILLIAMS-ECHOLS DRY GOODS COMPANY *v.* WALLACE.

Opinion delivered March 1, 1920.

1. CARRIERS—ELEVATORS—CONTRIBUTORY NEGLIGENCE.—In an action for injuries to one riding in an unlighted elevator on a dark day, evidence *held* sufficient to warrant a finding that he was not guilty of contributory negligence in allowing his heel to extend beyond the platform of the elevator.

2. CARRIERS—CONSTRUCTION OF ELEVATOR—NEGLIGENCE.—The fact that the back wall of an elevator was so constructed that a beam jutted into the elevator hole so as to close up the space between the wall and the floor of the elevator, without affording some protection to one who inadvertently overstepped the edge of the elevator floor, was sufficient to authorize a finding of negligence.

3. CARRIERS—OPERATION OF ELEVATOR—INSTRUCTION AS TO NEGLIGENCE.—Where the complaint charged five acts of negligence, some of which apart from the other facts in the case may not have constituted actionable negligence, but all of which, taken together, tended to make out a charge of negligence, it was not error to refuse to exclude those acts from the consideration

of the jury, and an instruction submitting generally the question of negligence to the jury, without enumerating the alleged acts of negligence set forth in the complaint, was not error.

4.  DAMAGES—INSTRUCTION.—In an action for damages for painful and disfiguring personal injuries, the court did not err in charging the jury that they should take into consideration the compensation to be awarded with reference to the pecuniary "and other losses," where the testimony showed that plaintiff received a very grievous injury which resulted in severe and long-continued pain and suffering, and a certain amount of disfigurement.

5.  APPEAL AND ERROR — PRESUMPTION FROM FAILURE TO ABSTRACT TESTIMONY.—Where appellant failed to abstract the testimony as to appellee's earning capacity, and as to the probability of increase thereof, it will be presumed that the court was justified in submitting the issue.

6.  APPEAL AND ERROR — IMPROPER EVIDENCE — EXCLUSION.—Where witness for plaintiff in an action for injuries received in defendant's elevator testified that defendant had since the injury made certain changes in the elevator to obviate danger, the prejudice was removed where plaintiff's counsel called attention to the fact that the testimony was not responsive to his questions and the court directed the jury not to consider it.

7.  TRIAL—PROCEEDINGS TO IMPANEL JURY.—Where counsel for plaintiff had reason to believe that a liability insurance company was interested in the result of a personal injury action, it was not improper to permit counsel to interrogate veniremen concerning their connection with any liability insurance companies doing business in the locality.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; affirmed.

*James B. McDonough,* for appellant; *J. Sam Wood,* of counsel.

1.  It was error to permit plaintiff's counsel to ask the jurors whether they were stockholders in any insurance company writing indemnity insurance. 131 Ark. 6. This case fairly settles the present case. See also 104 *Id.* 1; 154 Pac. 159; 150 N. Y. S. 93; 154 S. W. 1070; 145 Pac. 1066; 172 S. W. 987; 166 S. W. 643; 146 N. Y. S. 762; 102 N. E. 778; 130 Pac. 986. The error was harmful. 90 N. E. 724; 159 N. W. 832. See also 79 N. E. 854; 126 S. W. 242. The only remedy is to reverse

the case to cure the error. 132 S. W. 974; 150 N. Y. S. 1093; 95 N. E. 10; 210 N. Y. 262; 206 *Id*. 20; 96 S. W. 530; 107 *Id*. 264; *Ib*. 1139.

2. It was error not to withdraw the case from the jury because of the voluntary remark of Tom J. Williams as to the place of accident. 78 Ark. 147; 48 *Id*. 460; 70 *Id*. 170; 79 *Id*. 388. No negligence whatever was proven in this case and it was harmful error to permit the voluntary statements of Tom Williams to go to the jury. *Supra*.

3. The court erred in the instructions given and those refused as asked by appellants. There was no evidence to show negligence of appellants and the issue should have been taken from the jury. 95 Ark. 597; *Ib*. 623; 77 Ark. 599; 82 *Id*. 131; 4 Crawford's Digest, pp. 4999 to 5008. The allegation of negligence of Williams in starting the elevator is not supported by any evidence. The scintilla doctrine does not apply. 118 Ark. 349; 122 *Id*. 445; 114 *Id*. 113.

4. It was especially error to give No. 6 for plaintiff. 82 Ark. 499.

5. A directed verdict for defendant should have been given. 85 Ark. 479; 89 *Id*. 562; 105 *Id*. 526; 111 *Id*. 309. The negligence of plaintiff is undisputed and established as matter of law. 89 Ark. 24; 104 *Id*. 267; 107 *Id*. 158.

*Vincent M. Miles*, for appellee.

1. There was no error in interrogating the jurors. 131 Ark. 6; 127 *Id*. 63.

2. The cases cited by appellant on the errors in instructions are not applicable here. 93 Ark. 397; 80 Cal. 575. Negligence of appellant was shown and the instructions contained no error. 127 Ark. 163; 213 U. S. 150; 128 Ark. 479; 87 *Id*. 109; 90 *Id*. 494.. No contributory negligence was proved. 85 Ark. 479. The jury has settled by their verdict the question of negligence and there are no reversible errors in the instructions.

McCulloch, C. J.  Appellant, a domestic corporation, is engaged in the wholesale dry goods business in the city of Fort Smith, and operates an elevator which transports passengers and freight from floor to floor in the store building.  Appellee received severe personal injuries while ascending from one floor to another in the elevator, and he instituted this action to recover compensation for his injuries, alleging that the same were caused by the negligence of appellant in the construction and operation of the elevator.  There was a denial in the answer of each of the allegations of negligence, but a trial of the issues before a jury resulted in a verdict in appellee's favor assessing damages in the sum of $7,000.

Appellee went into the store of appellant to purchase certain articles of merchandise, and was invited by a salesman into the elevator to be carried to an upper floor of the building for the purpose of being shown the articles sought to be purchased.  The elevator was used for lifting freight as well as passengers, and was operated by means of a rope cable handled by the operator.  When appellee entered the elevator he was accompanied by two of the employees of appellant, both of whom were salesmen, and one of whom was on this particular trip operating the elevator.  There was an incandescent electric lamp hanging immediately in front of the elevator, but it was not lighted at that time, though according to the evidence the day was a dark and cloudy one.  There was a closed door on the opposite side of the elevator from the side on which appellee and his companions entered.  The elevator was enclosed by a brick wall, and beneath the door on the back side was a wooden beam seven or eight inches wide and three and a half inches thick, which extended out into the elevator hole about eighteen inches above the line of the first floor of the building.  When the elevator stood at the first floor, there was a clearance of about three and a half or four inches between the elevator floor and the brick wall on the back side, but when the elevator passed the beam just referred to in ascending, this clearance was completely taken up,

and the floor of the elevator came nearly in contact with the beam as it passed. Above the beam there was a space of about eighteen inches, the thickness of the brick wall, between the inside of the elevator hole and the closed door. The brick wall, the beam and the closed door were, according to the testimony, painted the same color, and, in the semi-darkness which prevailed when the light was not turned on, it was not easy to discover the beam jutting out into the elevator hole. When appellee walked into the elevator, he stepped over to the back side and turned around fronting the door through which he had entered and took a position with his heel partly extending over the clearance space between the floor of the elevator and the brick wall at the back. He was not aware of the fact that his heel thus extended over the clearance, nor that the beam jutted out into the hole so as to close up the clearance space as the elevator ascended. Mr. Williams, one of the salesmen, took hold of the cable and started the elevator upward, and as it arose to the beam appellee's heel was caught, and very serious and severe injuries were inflicted.

It is unnecessary to discuss the extent of the injury further than to say that the proof was sufficient to warrant the recovery of the amount of damages awarded by the jury.

There were five acts of negligence charged against appellant, which are set forth in the brief of counsel in the following order:

"*First.* Negligent operation of the elevator without any railing, board or other obstruction around the back of the elevator; *second,* negligently permitting the elevator well to be suddenly reduced by the beam, the beam coming abruptly out from the wall, thus suddenly reducing the clearance; *third,* negligent failure to have a flange of board or metal inclining from the beam downward toward the wall; *fourth,* negligently failing to have a light in front of the elevator; *fifth,* the negligence of Tom Williams in suddenly starting the elevator upward."

It is contended, in the first place, that the evidence is not sufficient to warrant the finding of negligence in either of the respects mentioned. We are of the opinion, however, that there was sufficient evidence to support a finding of negligence on the part of appellant in the construction and operation of the elevator, and also there was sufficient evidence to support the finding that appellee was not guilty of contributory negligence. It was a dark and gloomy day and the electric lamp in the front of the elevator was not lighted. The back wall of the elevator was so constructed as to be deceptive in appearance and to mislead a person entering the elevator for the purpose of ascending to another floor. The jutting of the beam out into the elevator hole so as to close up the space between the wall and the floor of the elevator, without affording some sort of protection to one who inadvertently overstepped the edge of the elevator floor, was sufficient to constitute negligence, or at least to authorize the inference of negligence from those facts.

The court gave, at appellee's request, instructions submitting generally the question of negligence to the jury without enumerating in detail the alleged acts of negligence set forth in the complaint. Appellant asked five separate instructions excluding from the consideration of the jury each of the alleged acts of negligence, and it is now argued, as grounds for reversal, that at least three of those alleged acts did not constitute negligence and were not the proximate cause of appellee's injuries and should have been taken from the jury by the three requested instructions. The instructions which it is contended the court should have given relate to the first, third and fifth acts of negligence set forth above.

Those acts may not of themselves, separate and apart from the other facts in the case, have constituted actionable negligence, but they tended to make out the charge of negligence as a whole, and it would not have been proper for the court to exclude those acts from the consideration of the jury. For instance, the failure to construct a railing or board around the back of the ele-

vator would not of itself have constituted negligence, but it was a fact proper for the consideration of the jury in determining whether or not appellant had adopted proper means of avoiding injury which might result from the uneven surface of the back wall caused by the extended beam. The failure to provide a flange extending from the beam downward to the floor line did not of itself constitute negligence, but it could have been considered by the jury as a proper method to be adopted in avoiding injury. The fact that the elevator was suddenly started after appellee walked in was not of itself negligence, but if there had been more time and deliberation, appellee might have discovered the perilous situation, and it was, therefore, proper for the jury to consider the fact that the light was not turned on and that the elevator was started immediately after he walked in.

There are numerous other assignments of error with respect to the rulings of the court in giving and refusing instructions, but none of them are of sufficient importance to call for discussion, except the one which relates to the sixth instruction, given at the request of appellee, in which the jury were told that in assessing the damages they should take into consideration the compensation to be awarded "with reference to the pecuniary and other losses which plaintiff has sustained," and which also told the jury that they might consider the "probable increase or diminution" of the earning capacity of appellee. It is argued that it was improper to use the words "and other losses," as there was no testimony to support a finding that there were losses other than those mentioned in the instructions. It will be observed that these words were used in connection with the word "pecuniary" and surely it cannot be contended that pecuniary losses were all the only ones that appellee sustained. He received a very grievous injury, which resulted in severe and long continued pain and suffering, and also in a certain amount of disfigurement, and these were all matters for the jury to consider.

Again, it is argued that as appellee was shown to be a man of about 72 years of age, there was no probability of increase of his earning capacity, and that it was error for the court to submit that issue to the jury. It is true that the testimony as abstracted shows that appellee was about 72 years of age, but he was still active in his business as a contractor. Appellant refrains from abstracting the testimony as to appellee's earning capacity and the probability of an increase on account of the conditions of the times, and we must, therefore, assume that there was evidence which has not been abstracted which justified the court in submitting that issue to the jury.

A reversal is sought on the ground that Mr. Williams, one of the witnesses introduced by appellee, made a statement in his testimony to the effect that appellant had, since the injury to appellee, made certain changes in the construction of the elevator so as to obviate the dangers. It is true that Mr. Williams, the witness in question, in responding to questions propounded him by appellee's counsel, undertook to state how the defects in the elevator could be cured, and, after describing the manner in which the defects could be corrected, he added that it had been done in that way, meaning that appellant had made the changes since the occurrence of the injury to appellee. Appellant's counsel at once interposed an objection, and appellee's counsel responded by calling attention to the fact that the statement of the witness was not responsive to his questions, and that he disclaimed any intention of drawing out that class of testimony. The court then directed the jury not to consider the testimony. Of course, the testimony was incompetent, but we think that prejudice was removed by the court excluding the statement from the consideration of the jury.

Finally, it is contended that there ought to be a reversal on account of the alleged misconduct of appellee's counsel in interrogating veniremen concerning connections with liability insurance companies. It appears from the record that before the trial commenced counsel for appellee made inquiry of appellant's counsel, apart

from the court and jury, stating that he had reason to be-
lieve that the attorney, Mr. McDonough, represented a lia-
bility insurance company, and asked him whom he repre-
sented in the case, and Mr. McDonough declined to give
any information on that subject. In the examination of the
veniremen, appellee's counsel propounded to them the in-
quiry whether or not they were employed by or were
stockholders in any liability insurance · company doing
business in Fort Smith. It is conceded that appellant was
protected to the extent of $5,000 by an insurance policy,
but appellant's counsel declined to give information as to
the particular company in which appellant carried its
liability insurance. Appellee was entitled, in the exam-
ination of veniremen, to ascertain whether or not they
were interested in any insurance company which carried
insurance for appellant, and the questions propounded did
not go beyond the limit of propriety so as to unduly em-
phasize the fact that appellant was protected wholly or
in part by indemnity insurance. There is nothing to in-
dicate that counsel for appellee was not acting in perfect
good faith in his inquiry of appellant's counsel and also
in propounding the questions to the veniremen. Counsel
stated that he had reason to believe that the attorney for
appellant was representing a liability insurance com-
pany, and it turned out to be true that such insurance
company was directly interested in the result of the trial.
There was nothing in the conduct of counsel for appellee
to indicate bad faith. The facts of the case bring it
within the rule announced by this court in the case of
*Cooper* v. *Kelly,* 131 Ark. 6.

We find no prejudicial error in the record, and the
judgment is, therefore, affirmed.