DR. PEPPER CO. *v.* DeFREECE.

5-2512 352 S. W. 2d 579

Opinion delivered January 8, 1962.

*Frierson, Walker & Snellgrove,* for appellant.

*Murphy & Arnold* and *John Purtle,* for appellee.

SAM ROBINSON, Associate Justice. This is a personal injury case. There was a judgment in the sum of $1,500 for appellee, W. M. DeFreece. The issue here is whether the trial court erred in failing to direct a verdict for appellants, Bob Baccus and Dr. Pepper Company, the defendants in the trial court.

Appellee, DeFreece, is the production manager of the Dr. Pepper Company at Newport. The Dr. Pepper Company, appellant here, is the Dr. Pepper Company located at Birmingham, Alabama, and it sells to local Dr. Pepper Companies such as the one in Newport syrup used in bottling cold drinks. The syrup is shipped in stainless steel barrels which along with the contents weigh about 658 pounds.

The appellant, Bob Baccus, works for the Dr. Pepper Company of Birmingham. He drives a truck and delivers the syrup to the local bottlers. On July 7, 1958, at the noon hour, Baccus arrived at the Dr. Pepper plant in Newport with 30 barrels of syrup to be unloaded. There were two men with the Dr. Pepper truck, Baccus and Sam Shellnutt. The two men took turns driving the truck, which was equipped with a sleeper cab. I. C. C. regulations require that a driver get four uninterrupted hours of sleep. When the truck arrived at the Newport plant, Shellnutt was in the sleeping compartment of the cab. Ordinarily both drivers would do the unloading, but on the occasion in question Shellnutt had not had his four hours of sleep and Baccus therefore did not call him.

All of the employees at the Newport plant had gone to lunch except appellee, DeFreece. He had his lunch with him, however, and went to his car and ate it. Baccus commenced to unload the truck by himself. It was not difficult for him to do this. He had unloaded it by himself many times. He had in the truck a mechanical device that let the barrels of syrup down from the bed of the truck to the unloading dock without much effort on the part of the one doing the unloading.

The mechanical unloader works in this manner: There are two metal runners that extend from the end of the bed of the truck to the unloading dock at a slope of about 45 degrees. The two runners are about two feet apart and are held together by steel rods. On each of four of the steel rods, there is a pair of steel arms extending upward. The arms are held in an upright position by strong springs and shock absorbers. When a barrel of syrup is rolled against the top pair of arms, the barrel presses them backward and down, but they exert enough resistance to cause the barrel to be let down slowly. When the barrel is free of the first pair of arms, the springs cause them to snap back to an upright position and the barrel is engaged by the next pair of arms, and so on down the runners of the unloading device until the barrel is rolled onto the unloading dock.

The following is what occurred, according to the testimony of appellee, DeFreece: After he finished eating his lunch, he returned to the unloading dock. Baccus had unloaded all except three or four of the 30 barrels. Space needed to be cleared on the unloading dock to make room for the three or four barrels yet to be unloaded. On his own initiative DeFreece helped to clear the necessary space. Then Baccus said to him, ''Well, let's get a couple more off of here and save me climbing back up there.'' The remaining barrels in the truck had been rolled up against the end of the unloader. Baccus walked to the left side of the unloading device and DeFreece went to the right side. They reached up and rolled a barrel onto the unloader. DeFreece then

reached up to catch hold of the next barrel, and one of the arms of the unloader, returning to an upright position, struck him on his elbow, breaking a small chip from the bone.

Appellee claims, first, that he was an emergency employee and as such the employer is liable for negligence. The trial court refused to submit that issue to the jury, holding that as a matter of law under the evidence DeFreece was not an emergency employee of the Dr. Pepper Company of Birmingham. Secondly, appellee says that he was an invitee of that Company, and on this theory appellants are liable for negligence, and that negligence of appellants caused his injuries.

Appellants are not liable on the theory that appellee was an emergency employee or an invitee or on any other theory, for the reason that there is no substantial evidence in the record that anyone was negligent except DeFreece himself. There is nothing complicated about the unloader. Any person could look at it and see how it works. No one needs to be told that if hit hard by a heavy piece of iron it will hurt and perhaps a bone will be broken. *Jamieson* v. *Woodward & Lothrop,* 247 F. 2d 23 (D. C. 1957). DeFreece's injury was due solely to his own negligence in placing his arm in a position where it would be struck by one of the arms of the unloader on the return to the upright position.

It is clear from the evidence that DeFreece had seen the unloader work many times. It was shown that all the syrup shipped from Birmingham was unloaded with an unloader such as the one in question. During a period of about eight months preceding his injury, DeFreece had signed receipts for syrup on 18 different occasions. DeFreece testified: "Now, I expect that I have seen it [the unloader] about every time that they used it, but as far as being anything like in a close distance of it to where I could observe any of the operations of it, why I'd say that maybe I checked the syrup half of the time or was back around when they were unloading half of the time during that time."

In other words, on as many as nine different occasions DeFreece had been around when they were unloading. He could not have been around where they were unloading nine times without observing that the arms of the unloader snapped back to an upright position when free of the barrel. It was no more necessary to tell him that if hit by one of the arms he might be injured than to tell him that he might be injured if hit by any other hard object.

In *Tucker Duck & Rubber Co.* v. *Harvey,* 202 Ark. 1033, 154 S. W. 2d 828, the Court said: " 'Something may properly be left to the instinct of self preservation and to the exercise of the ordinary faculties which every man should use when his safety is known to be involved,' as we said in *Mo. Pac. R. Co.* v. *Martin,* 186 Ark. 1101, 57 S. W. 2d 1047. In *Williams Cooperage Co.* v. *Kittrell,* 107 Ark. 341, 155 S. W. 119, Chief Justice McCulloch quoted from 1 Labatt on Master & Servant, § 238, as follows: 'The master is not required to point out dangers which are readily ascertainable by the servant himself if he makes an ordinarily careful use of such knowledge, experience and judgment as he possesses. The failure to give such instructions, therefore, is not culpable where the servant might, by the exercise of ordinary care and attention, have known of the danger, or, as the rule is also expressed, where he had the means necessary for ascertaining the conditions, and there was no concealed danger which could not be discovered.' "

Baccus had no reason to think that DeFreece would not see that which was clearly obvious and which DeFreece had been in a position to observe, according to his own testimony, more than half a dozen times.

DeFreece is in no stronger position as an invitee. Liability for an injury to an invitee must be predicated upon negligence. *Kroger Grocery & Baking Co.* v. *Dempsey,* 201 Ark. 71, 143 S. W. 2d 564.

On the invitee theory, appellee cites Restatement, Torts, § 343. But there it is said: "A possessor of land is subject to liability for bodily harm caused to business

visitors by a natural or artificial condition thereon if, but only if, he . . . has no reason to believe that they will discover the condition or realize the risk therein." Here Baccus had no reason at all to believe that DeFreece would not discover the condition and realize the metal arm of the unloading machine might hurt him if it struck him.

Appellee argues that the unloading machine was out of repair. There is no substantial evidence to that effect and there is no substantial evidence that if it was out of repair such condition caused or contributed to cause the injury.

Reversed and dismissed.